Vivek Shah
1301 N Broadway Ste 32167
Los Angeles, CA 90012
newvivekshah@gmail.com
(224) 246-2874

FEE PAID

> FILED
> CLERK, U.S. DISTRICT COURT
> 5/7/26
> CENTRAL DISTRICT OF CALIFORNIA
> BY ___CS___ DEPUTY
> DOCUMENT SUBMITTED THROUGH THE
> ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

VIVEK SHAH,

      Petitioner,

    v.

PASHION FOOTWEAR INC., a
Delaware corporation,

      Respondent.

Case No. 2:26-cv-05124-PA-ASx

**PETITION TO VACATE**
**ARBITRATION AWARD**
[9 U.S.C. § 10;
Cal. Code Civ. Proc. § 1286.2]

---

**PETITION TO VACATE ARBITRATION AWARD**

Petitioner Vivek Shah ("Petitioner") petitions this Court to vacate the arbitration award entered against him on May 4, 2026 in *Vivek Shah v. Pashion Footwear Inc.*, AAA Case No. 01-25-0003-7776, by Arbitrator David B. Coher of Coher ADR (the "Award"). Petitioner alleges as follows:

**THE PARTIES**

1. Petitioner Vivek Shah is an individual residing in Los Angeles County, California, and is a citizen of the State of California.

1

2.    Respondent Pashion Footwear Inc. ("Pashion") is a corporation organized under the laws of the State of Delaware. On information and belief, Pashion's principal place of business is not in the State of California. The street and mailing address Pashion has filed with the California Secretary of State (2950 Broad Street, #1030, San Luis Obispo, CA 93401) is a private mailbox suite at a commercial mail receiving agency, not Pashion's executive headquarters or nerve center. Pashion is therefore a citizen of Delaware and of one or more states other than California for purposes of 28 U.S.C. § 1332(c)(1).

**JURISDICTION AND VENUE**

3.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). The parties are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.    The amount in controversy in the underlying arbitration was, and is, well above the diversity threshold. Petitioner alleged fifteen (15) violations of Cal. Penal Code § 631(a) and fifteen (15) parallel violations of 18 U.S.C. § 2511(1)(a). Section 637.2(a)(1) of the California Penal Code authorizes statutory damages of $5,000 per CIPA violation, yielding a minimum recovery of $75,000 on the CIPA claim alone. Section 2520(c)(2)(B) of Title 18 authorizes statutory damages of the greater of $100 per day or $10,000 per ECPA violation, yielding a minimum recovery of $150,000 on the ECPA claim. Petitioner also seeks declaratory relief, public and private injunctive relief, and recovery of his $225 AAA filing fee. The aggregate amount in controversy thus exceeds $225,000, well above the $75,000 threshold.

2

5.    The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., governs the arbitration agreement at issue, which provides that "the Federal Arbitration Act governs the arbitrability of all disputes." The California Arbitration Act, Cal. Code Civ. Proc. §§ 1280 et seq., applies in parallel as to substantive matters of California law and procedure not preempted by the FAA, because the agreement also provides that "applicable California state or U.S. federal law may also apply to the substance of any disputes."

6.    Venue is proper in this District under 9 U.S.C. § 10(a) because the arbitration award was made in this District. The arbitration agreement provides that "[t]he arbitration shall take place in Los Angeles, California." The Arbitrator, David B. Coher, maintains his offices in Pasadena, California, within this District. The preliminary management hearing was conducted by the Arbitrator from this District, and the Award was issued from this District. Venue is proper in the Western Division under General Order 21-01 because Pasadena is within the Western Division.

7.    This Petition is timely. The Award was issued on May 4, 2026. This Petition is filed within three months of the Award and is therefore timely under 9 U.S.C. § 12 and within 100 days under Cal. Code Civ. Proc. § 1288.

**FACTUAL BACKGROUND**

8.    Pashion operates an e-commerce retail website at www.pashionfootwear.com. Pashion's website Terms of Use contain a binding arbitration clause and class-action waiver. The Terms specify that arbitration shall be administered by AAA "under the AAA's Commercial Dispute Resolution Procedures as supplemented by the Supplementary Procedures for Consumer-Related Disputes (and as stated therein, if there is a difference

between the Commercial Dispute Resolution Procedures and the Supplementary Procedures, the Supplementary Procedures will be used)." A true and correct copy of the Terms is attached as **Exhibit A**.

9. Petitioner used Pashion's website on five occasions and conducted searches using unique terms. On August 4, 2025, Petitioner discovered that Pashion's website was sending the contents of his search-bar communications to multiple third parties (Google, Facebook, and Pinterest) while those communications were in transit, without his consent.

10. On August 10, 2025, Petitioner filed a Demand for Arbitration with the AAA, paid the $225 consumer filing fee, and commenced AAA Case No. 01-25-0003-7776. The AAA's filing receipt is attached as **Exhibit B**.

11. On April 7, 2026, Petitioner filed an Amended Demand asserting two claims: (i) violation of Cal. Penal Code § 631(a) (the California Invasion of Privacy Act, "CIPA"); and (ii) violation of 18 U.S.C. § 2511(1)(a) (the federal Electronic Communications Privacy Act, "ECPA"). The Amended Demand is attached as **Exhibit C**.

12. The Amended Demand alleged in pertinent part that Pashion "customized and deployed third party code"; that Pashion "played an active role in the use of the code to intercept" Petitioner's electronic communications; and that Pashion "knowingly and unlawfully used those intercepted communications to guide its advertising and marketing efforts." The Amended Demand further alleged: "It engaged in such conduct for unlawful and tortious purposes, including associating the content of my electronic communications with preexisting consumer profiles and using the contents of my electronic communications in an unauthorized manner. Respondent intended to disclose my personally identifiable communications to third parties so that it could deliver targeted ads to me. Respondent's

4

disclosure and use of my personally identifiable information for unauthorized advertising constitutes a further invasion of privacy beyond the act of intercepting the information alone."

13. On April 8, 2026, Pashion's counsel submitted a letter to the Arbitrator (treated as the moving papers on a dispositive motion) seeking dismissal and requesting reclassification of the matter as a commercial arbitration. Pashion's letter is attached as **Exhibit E**.

14. On April 10, 2026, the Arbitrator conducted a Preliminary Management Hearing. The Scheduling Order, dated April 12, 2026, is attached as **Exhibit D**. Pursuant to that Order, Petitioner's same-day filing was deemed his Opposition. Petitioner's Opposition is attached as **Exhibit F**.

15. On May 1, 2026, Pashion submitted its Reply, attached as **Exhibit G**. The Reply raised, for the first time, an argument Pashion's moving papers had not made: that Petitioner lacked standing under California law because he was not "injured by a violation" within the meaning of Cal. Penal Code § 637.2(a), and that California's "beneficial interest test" required an Article III–style injury. Pashion's moving papers had framed standing exclusively as a federal Article III "tester" issue, citing only federal cases (*Khamooshi*, *Rodriguez*, and *Byars v. Sterling Jewelers*); the § 637.2(a) statutory-injury argument and the California cases supporting it (*Limon v. Circle K Stores Inc.* and *Muha v. Experian Information Solutions, Inc.*) appeared for the first time in the Reply. Petitioner had no opportunity to respond to the new argument before the Award issued.

16. On May 4, 2026 — three days after the Reply and seven days before the previously-scheduled May 11, 2026 status conference — the Arbitrator issued the Award attached as

**Exhibit H**. The Award dismissed both claims, denied leave to amend, canceled the status conference, and dismissed the case in its entirety.

17.    The Award's reasoning, in summary, was as follows. As to CIPA: § 631(a) "does not itself provide a private right of action," and the proper civil vehicle is § 637.2. The Arbitrator further concluded that "[n]either the Demand nor the Amended Demand alleges facts sufficient to establish such an injury or actionable basis for relief," and denied leave to amend. As to ECPA: the Arbitrator held that the Amended Demand "alleges Respondent's consent" sufficient to invoke the one-party consent rule of 18 U.S.C. § 2511(2)(d), and that "Claimant has not pleaded a viable Section 637.2 claim or other independent criminal or tortious act that would remove Respondent's alleged consent from the protection of Section 2511(2)(d)."

18.    The AAA Consumer Arbitration Rules in effect at all relevant times are attached as **Exhibit I**. Pashion's California Secretary of State Statement of Information is attached as **Exhibit J**.

## GROUNDS FOR VACATUR

19.    The Award must be vacated under 9 U.S.C. § 10(a)(3) and (a)(4), and in the alternative under Cal. Code Civ. Proc. § 1286.2(a)(4) and (a)(5), on the following grounds:

   a.    The Arbitrator exceeded his powers under § 10(a)(4) and § 1286.2(a)(4) by importing federal Article III standing doctrine and federal court-style pleading standards into a private contractual arbitration, in contravention of AAA Consumer Rules R-4 and R-7, the parties' arbitration agreement, and the controlling AAA framework that governs his authority.

b.     The Arbitrator exceeded his powers and acted in manifest disregard of controlling California Supreme Court authority by holding that the Amended Demand failed to allege "injury" sufficient to support a claim under Cal. Penal Code § 637.2, when § 637.2(c) expressly provides that "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages," and *Ribas v. Clark*, 38 Cal. 3d 355, 365 (1985), holds the same.

c.     The Arbitrator exceeded his powers and acted in manifest disregard of the law and the record by ruling that the Amended Demand failed to plead the criminal-or-tortious-purpose exception to the ECPA's one-party consent rule. The Amended Demand expressly alleges that Pashion "engaged in such conduct for unlawful and tortious purposes," and pleads almost word-for-word the conduct that the Northern District of California recently held was sufficient to invoke the crime-tort exception. *See Smith v. Rack Room Shoes, Inc.*, No. 24-cv-06709-RFL, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025).

d.     The Arbitrator engaged in misconduct under § 10(a)(3) and § 1286.2(a)(5) by refusing to hear evidence material to the controversy. The Arbitrator made factual rulings as to the supposed absence of "injury" and "actionable basis for relief" without permitting any discovery whatsoever, contrary to Cal. Code Civ. Proc. § 1283.05, and without giving Petitioner notice that the question of leave to amend was at issue. The Arbitrator denied leave to amend sua sponte, without briefing or argument from either party on that question.

7

e.      The Award is so imperfectly executed under § 10(a)(4) that vacatur is required. The Arbitrator's ECPA ruling is internally inconsistent with the express text of the Amended Demand, which the Arbitrator acknowledged but then disregarded.

f.      The Arbitrator further engaged in misconduct under § 10(a)(3) and § 1286.2(a)(5) by deciding the case on a ground first raised in Pashion's reply brief, to which Petitioner had no opportunity to respond. The Award's CIPA dismissal turns on the "injured by a violation" framework of Cal. Penal Code § 637.2(a) and the California "beneficial interest test" — arguments that appear nowhere in Pashion's moving papers and were introduced for the first time in Pashion's Reply.

## RELIEF REQUESTED

WHEREFORE, Petitioner respectfully requests that the Court enter an order:

A.      Vacating the Award in its entirety under 9 U.S.C. § 10(a)(3) and (a)(4) and Cal. Code Civ. Proc. § 1286.2(a)(4) and (a)(5);

B.      Remanding the matter to the AAA for arbitration before a different arbitrator;

C.      Awarding Petitioner his costs incurred in this proceeding; and

D.      Granting such other and further relief as the Court deems just and proper.

Dated: May 7, 2026

/s/ Vivek Shah

Vivek Shah

8

# Exhibit A

# Terms & Conditions

**TERMS OF USE**

**IMPORTANT - PLEASE READ THESE TERMS OF USE CAREFULLY BEFORE ACCESSING OR USING THE PASHION FOOTWEAR INC. WEBSITE. BY ACCESSING OR USING ANY PART OF THE WEBSITE, YOU AGREE TO AND SHALL BE BOUND BY THESE TERMS OF USE. IF YOU DO NOT AGREE TO ALL THE TERMS AND CONDITIONS OF THESE TERMS OF USE, THEN YOU MAY NOT ACCESS THE WEBSITE, PURCHASE ANY PRODUCT FROM THE WEBSITE, OR USE ANY OTHER SERVICES OR APPLICATIONS PASHION FOOTWEAR INC. MAY PROVIDE. IF THESE TERMS OF USE ARE CONSIDERED AN OFFER, ACCEPTANCE IS EXPRESSLY LIMITED TO THESE TERMS OF USE.**

NOTE: THESE TERMS CONTAIN A BINDING ARBITRATION PROVISION, CLASS ACTION WAIVER AND TIME LIMIT ON SUBMITTING CLAIMS THAT AFFECT YOUR RIGHTS. PLEASE READ THESE TERMS CAREFULLY.

**OVERVIEW**

This Website (as defined below) is operated by Pashion Footwear Inc. ("Pashion Footwear"). Throughout the Website, and these Terms of Use (as defined below) the terms "we", "us" and "our" refer to Pashion Footwear. Pashion Footwear offers this "Website," which, for the purposes of these Terms of Use, shall include this Website located at www.pashionfootwear.com, and all information, products for purchase, tools and other services that may be available to you from the Website or any other application including mobile applications conditioned upon your acceptance of all terms, conditions, policies and notices stated in these Terms of Use.

By visiting our Website, purchasing something from us, or otherwise using or accessing any other service or application we may provide, you indicate that you have read these Terms of Use, and acknowledge and agree to be entirely bound by the following terms and conditions, including any additional terms and conditions and policies referenced herein and/or available by hyperlink ("Terms of Use" or "Terms"). These Terms of Use apply to all users of the Website, including without limitation users who are browsers, vendors, customers, merchants, and/ or contributors of Content (defined below). To be clear, by using our Website, you are effectuating these Terms of Use as a binding agreement.

Any new features or tools which are added to the Website shall also be subject to the Terms of Use. You can review the most current version of the Terms of Use at any time on this page. We reserve the right to update, change or replace any part of these Terms of Use by posting

updates and/or changes to our Website. It is your responsibility to check this page periodically for changes. Your continued use of or access to the Website following the posting of any changes constitutes acceptance of those changes.

Our store is hosted on Shopify Inc. They provide us with the online e-commerce platform that allows us to sell our products and services to you through our Website. You may view Shopify Inc's Terms of Use here.

## SECTION 1 – ACCESS AND LIMITATIONS

By agreeing to these Terms of Use, you represent that you are at least the age of majority in the state or province of residence in the country that you live, or that you are the age of majority in the state or province of residence in the country that you live and you have given us your consent to allow any of your minor dependents to use this Website.

We only authorize you to use the Website and Content for your own personal, non-commercial use in compliance with all applicable laws (including but not limited to applicable intellectual property and copyright laws). "Content" means any information or materials displayed on the Website or other applications, such as, text, graphics, data, articles, photos, images, illustrations, and so forth. No licenses or rights are granted to you by implication or otherwise under any intellectual property rights owned or controlled by us or our licensors, except for the licenses and rights expressly granted in these Terms.

Subject to your compliance with these Terms, we grant you a limited, non-exclusive, non-transferable license, to (i) access and view any Content solely for your personal and noncommercial purposes and (ii) access and view any Content to which you are permitted access, solely for your personal and noncommercial purposes. You have no right to sublicense the license rights granted in this section. You may not use our Website or products for any illegal or unauthorized purpose nor may you, in the use of our Website or products, violate any applicable laws, including but not limited to intellectual property laws. We reserve the right to refuse Website to anyone for any reason at any time.

## SECTION 2 – PAYMENT AND ELECTRONIC COMMUNICATIONS

We reserve the right to determine pricing for our products or services. We will make reasonable efforts to keep pricing information published on the Website up to date. We encourage you to check our Website periodically for current pricing information. We may change the pricing or fees for any product at any time. We may, in our sole discretion, make promotional offers with different features and different pricing to any of our customers. These promotional offers, unless made to you, will not apply to your offer or these Terms. These products or services may have limited quantities and are subject to return or exchange only according to our Return Policy.

Before you pay for products or services you'd like to purchase, you will have an opportunity to review and accept the fees that you will be charged. We will list shipping charges for your order upon checkout, and you must pay all shipping charges for the location of the address you provide. Please note that international packages may be subject to duties and taxes. You must also pay all tariff, import, customs, tax, and other charges applicable in your jurisdiction. The limits for duty-free packages are established by your local customs authorities. Please check with your local customs office for information. Due to restrictions from our financial partners or restrictions by law, there are certain countries that we cannot not ship to.

We will attempt in good faith to deliver your purchases in accordance with your order, but we will not be responsible or liable for any impossibility or delays or failure in such delivery. We expressly reserve the right to effect delivery of any order in any number of separate shipments, and the modes of transport and carriers will be decided at our discretion. Your order will be delivered to the delivery address you specify when placing your order. If your delivery address is geographically remote or otherwise difficult to deliver to, it is possible that we may not be able to deliver there. We will not be responsible or liable for any delay or failure to deliver due to any cause which is unavoidable or beyond our reasonable control. In such cases, we will have the right, at our option, without penalty or any liability for breach, to terminate all or any part of any order or to reschedule delivery within a reasonable time.

You authorize us directly or through our third-party payment processors to charge all sums for the orders that you make, including all applicable taxes and shipping costs, to the payment method specified in your account. If you pay any fees with a credit card, we may seek pre-authorization of your credit card account prior to your purchase to verify that the credit card is valid and has the necessary funds or credit available to cover your purchase. If your order is placed on hold, we will reach out to you to ensure that the delays are minimal. We reserve the right to suspend or terminate access to the Website for any customer for which any amount is due but unpaid. In addition to the amount due for products, a delinquent customer or account will be charged with fees or charges that are incidental to any chargeback or collection of any the unpaid amount, including collection fees.

We reserve the right to refuse any order you place with us. We may, in our sole discretion, limit or cancel quantities purchased per person, per household or per order. These restrictions may include orders placed by or under the same customer account, the same credit card, and/or orders that use the same billing and/or shipping address. In the event that we make a change to or cancel an order, we may attempt to notify you by contacting the e-mail and/or billing address/phone number provided at the time the order was made. We reserve the right to limit or prohibit orders that, in our sole judgment, appear to be placed by dealers, resellers or distributors.

You agree to provide current, complete and accurate purchase and account information for all purchases made at through our Website. You agree to promptly update your account and other information, including your email address and credit card numbers and expiration dates, so that we can complete your transactions and contact you as needed.

By using the Website and/or the services, you consent to receiving electronic communications from Pashion Footwear. These electronic communications may include notices via email and text about applicable products or services and charges related to your purchases or other information concerning or related to the Website. These electronic communications are part of your relationship with Pashion Footwear and you receive them as part of your use of the Website. Standard text or data charges may apply to notices sent via text.  Where offered, you may disable text message notifications by responding to any such message with "STOP", or by following instructions provided in the message.

You agree that any notices, agreements, disclosures or other communications that we send you electronically will satisfy any legal communication requirements, including that such communications be in writing. You will have the ability to opt-out of certain marketing or promotional emails that we send.

## SECTION 3 – BILLING AND ACCOUNT INFORMATION

You understand that your personal information (not including credit card information), may be transferred unencrypted and involve (i) transmissions over various networks; and (ii) changes to conform and adapt to technical requirements of connecting networks or devices. Credit card information is always encrypted during transfer over networks.

You may choose to create an account on our Website. If you do, you will have a password for your account. To protect your account, you should choose a password different from names, birthdays or street addresses associated with you. You are responsible for maintaining the confidentiality of your account and password and for restricting access to your computer. To the fullest extent permissible by applicable law, you agree to accept responsibility for all activities that occur under your account or password. We may revoke your right to have an Account at any time at our sole discretion.

Your submission of personal information through the Website is governed by our Privacy Policy.

## SECTION 4 – USER CONTENT

Other than personally identifiable information, which is subject to our Privacy Policy, any material, information, suggestions, ideas, concepts, know-how, techniques, questions,

comments, reviews or other communication you transmit or post to this Website in any manner ("User Content") is and will be considered non-confidential and non-proprietary. By submitting or making available any User Content, you hereby grant to Pashion Footwear a worldwide, irrevocable, perpetual, non-exclusive, transferable, royalty-free license, with the right to sublicense, to use, view, copy, adapt, modify, distribute, license, sell, transfer, publicly display, publicly perform, transmit, stream, broadcast, access, view, and otherwise exploit such User Content on, through, by means of or to promote or market the Website or our products and services. We do not claim any ownership rights in any such User Content and nothing in these Terms will be deemed to restrict any rights that you may have to use and exploit any such User Content. You understand that we shall be under no obligation (i) to maintain any User Content in confidence; (ii) to pay compensation for any User Content; or (iii) to respond to any User Content.

You acknowledge and agree that you are solely responsible for all User Content that you make available. Accordingly, you represent and warrant that: (i) you either are the sole and exclusive owner of all User Content that you make available through the Website, application or services or you have all rights, licenses, consents and releases that are necessary to grant to Pashion Footwear the rights in such User Content, as contemplated under these Terms; (ii) neither the user Content nor your posting, uploading, publication, submission or transmittal of the User Content or our use of the User Content (or any portion thereof) on, through or by means of the Website applications of any of our products or services will infringe, misappropriate or violate a third party's patent, copyright, trademark, trade secret, moral rights or other proprietary or intellectual property rights, or rights of property, publicity or privacy, or result in the violation of any applicable law or regulation; and (iii) your User Content and your postings will not defame any person, business, location or property.

We take no responsibility and assume no liability for any comments posted to the Website by you or any third-party. We may, but have no obligation to, monitor, edit or remove User Content from the Website that we determine in our sole discretion are unlawful, offensive, threatening, libelous, defamatory, pornographic, obscene or otherwise objectionable or violates any party's intellectual property or these Terms of Use.

**SECTION 5 – PASHION FOOTWEAR INTELLECTUAL PROPERTY RIGHTS**

Pashion Footwear owns any and all intellectual property rights relating to the Pashion Footwear brand, products, trade name, trade dress, and other content including: current or pending patents, copyright, trademark, service mark, trade name, trade dress, proprietary logo, insignia, business identifier, and/or other texts, graphics or Content that has or provides the "look and feel" of the Pashion Footwear brand image, as well as all of the Content, including the text, graphics, programming, photographs, video and audio contained herein (the "Intellectual Property"). Your use of the Website does not grant you any rights or licenses relating to the Intellectual Property, including, but not limited to, any copyrights, trademark rights, patent rights, database rights, moral rights, sui generis rights and other intellectual property and proprietary rights therein, except as expressly provided for in the Terms of Use. None of the Intellectual Property may be used, reproduced, published, transmitted, distributed, displayed, performed, exhibited, modified, used to create derivative works, sold, re-sold or

used in any sale, or exploited for in any way, in whole or in part, except as provided for herein and unless you obtain our prior written consent. You may not reproduce, modify, display, sell, or distribute the Intellectual Property, or use it in any other way for public or commercial purpose. The foregoing limitations include, but are not limited to, copying or adapting the HTML code used to generate web pages on the Website. Any unauthorized use of any such information or materials may violate patent laws, copyright laws, trademark laws, laws of privacy and publicity, and other laws and regulations and is prohibited. In the event of a violation of these laws and regulations, we reserve the right to seek all remedies available by law and in equity. We reserve the right to block or deny access to the Website to anyone at any time for any reason. All other Content, including product names, names of services, trademarks, service marks and other intellectual property is the property of their respective owners, as indicated, and may only be used as permitted.

## SECTION 6 – ACCURACY AND COMPLETENESS OF INFORMATION; MODIFICATIONS TO THE SERVICE AND PRICES

We have made every effort to display as accurately as possible the colors and images of our products that appear at the store. We cannot guarantee that your computer monitor's display of any color will be accurate. We do not warrant that the quality of any products purchased or obtained by you will meet your expectations, or that any errors will be corrected.

Although we do our best to maintain accurate and updated information, we cannot guarantee that it is always accurate and up to date. Any reliance on the material on this Website is at your own risk. This Website may contain certain historical information. Historical information, necessarily, is not current and is provided for your reference only. We reserve the right to modify the contents of this Website at any time, but we have no obligation to update any information on our Website. You agree that it is your responsibility to monitor changes to our Website.

Occasionally there may be information on our Website that contains typographical errors, inaccuracies or omissions that may relate to product descriptions, pricing, promotions, offers, product shipping charges, transit times and availability. We reserve the right to correct any errors, inaccuracies or omissions, and to change or update information or cancel orders if any information on the Website or any related applications or services is inaccurate at any time without prior notice (including after you have submitted your order).

We undertake no obligation to update, amend or clarify information on the Website or any related applications or services, including without limitation, pricing information, except as required by law. No specified update or refresh date applied to the Website or any related applications or services should be taken to indicate that all information on the Website or any related applications or services has been modified or updated.

Prices for our products are also subject to change without notice. All descriptions of products or product pricing are subject to change at any time, with or without notice, at our sole discretion. We reserve the right to discontinue any product at any time. Any offer for any

product or service made on this Website is void where prohibited. We reserve the right at any time to modify or discontinue the Website or any related applications or services (or any part or Content thereof) without notice at any time. We shall not be liable to you or to any third party for any modification, price change, suspension or discontinuance of any product, the Website or any related applications or services.

## SECTION 7 – OPTIONAL TOOLS AND THIRD-PARTY LINKS

We may provide you with access to third-party tools, which may include, but shall not be limited to, payment processing tools, over which we neither monitor nor have any control nor input. You acknowledge and agree that we provide access to such tools "as is" and "as available" without any warranties, representations or conditions of any kind and without any endorsement.

We shall have no liability whatsoever arising from or relating to your use of optional third-party tools. Any use of optional tools offered through the Website is entirely at your own risk and discretion and you should ensure that you are familiar with and approve of the terms on which tools are provided by the relevant third-party provider(s).

Additionally, certain Content, products and services available via our Website may include materials from third parties. Third-party links on this Website may direct you to third-party websites that are not affiliated with us. We are not responsible for examining or evaluating the content or accuracy and we do not warrant and will not have any liability or responsibility for any third-party materials or websites, or for any other materials, products, or services of third parties.

We are not liable for any harm or damages related to the purchase or use of goods, services, resources, Content, or any other transactions made in connection with any third-party websites. Please review carefully the third-party's policies and practices and make sure you understand them before you engage in any transaction. Complaints, claims, concerns, or questions regarding third-party products should be directed to the third party.

## SECTION 8 – MOBILE TERMS OF SERVICE FOR PASHION FOOTWEAR

Last updated: Jan. 7, 2025
The Pashion Footwear mobile message service (the "Service") is operated by Pashion Footwear ("Pashion Footwear", "we", or "us"). Your use of the Service constitutes your agreement to these terms and conditions ("Mobile Terms"). We may modify or cancel the Service or any of its features without notice. To the extent permitted by applicable law, we may also modify these Mobile Terms at any time and your continued use of the Service following the effective date of any such changes shall constitute your acceptance of such changes.

By consenting to Pashion Footwear's SMS/text messaging service, you agree to receive recurring SMS/text messages from and on behalf of Pashion Footwear through your wireless

provider to the mobile number you provided, even if your mobile number is registered on any state or federal Do Not Call list. Text messages may be sent using an automatic telephone dialing system or other technology. Service-related messages may include updates, alerts, and information (e.g., order updates, account alerts, etc.). Promotional messages may include promotions, specials, and other marketing offers (e.g., cart reminders).

You understand that you do not have to sign up for this program in order to make any purchases, and your consent is not a condition of any purchase with Pashion Footwear. Your participation in this program is completely voluntary.

We do not charge for the Service, but you are responsible for all charges and fees associated with text messaging imposed by your wireless provider. Message frequency varies. Message and data rates may apply. Check your mobile plan and contact your wireless provider for details. You are solely responsible for all charges related to SMS/text messages, including charges from your wireless provider.

You may opt-out of the Service at any time. Text the single keyword command STOP to 82602 or click the unsubscribe link (where available) in any text message to cancel. You'll receive a one-time opt-out confirmation text message. No further messages will be sent to your mobile device, unless initiated by you. If you have subscribed to other Pashion Footwear mobile message programs and wish to cancel, except where applicable law requires otherwise, you will need to opt out separately from those programs by following the instructions provided in their respective mobile terms.

For Service support or assistance, text HELP to 82602 or email info@pashionfootwear.com.

We may change any short code or telephone number we use to operate the Service at any time and will notify you of these changes. You acknowledge that any messages, including any STOP or HELP requests, you send to a short code or telephone number we have changed may not be received and we will not be responsible for honoring requests made in such messages.

The wireless carriers supported by the Service are not liable for delayed or undelivered messages. You agree to provide us with a valid mobile number. If you get a new mobile number, you will need to sign up for the program with your new number.

To the extent permitted by applicable law, you agree that we will not be liable for failed, delayed, or misdirected delivery of any information sent through the Service, any errors in such information, and/or any action you may or may not take in reliance on the information or Service.

We respect your right to privacy. To see how we collect and use your personal information, please see our Privacy Notice.

We will not share your opt-in to an SMS campaign with any third party for purposes unrelated to providing you with the services of that campaign. We may share your Personal Data, including your SMS opt-in or consent status, with third parties that help us provide our messaging services, including but not limited to platform providers, phone companies, and any other vendors who assist us in the delivery of text messages.

The website uses cookies to help keep track of items you put into your shopping cart including when you have abandoned your cart and this information is used to determine when to send cart reminder messages via SMS.

## SECTION 9 – USER CONDUCT AND PROHIBITED USES

In addition to other prohibitions as set forth in these Terms of Use, you are prohibited from using the Website or its Content: (i) for any unlawful purpose; (ii) to solicit others to perform or participate in any unlawful acts; (iii) to violate any international, federal, provincial or state regulations, rules, laws, or local ordinances; (iv) to infringe upon or violate our intellectual property rights or the intellectual property rights of others; (v) to harass, abuse, insult, harm, defame, slander, disparage, intimidate, or discriminate based on gender, sexual orientation, religion, ethnicity, race, age, national origin, or disability; (vi) to submit false or misleading information; (vii) to upload or transmit viruses or any other type of malicious code that will or may be used in any way that will affect the functionality or operation of the Website, or any related applications or services, other websites, or the Internet; (viii) to collect or track the personal information of others; (viv) to spam, phish, pharm, pretext, spider, crawl, or scrape; (x) for any obscene or immoral purpose; or (xi) to interfere with or circumvent the security features of the Website or any related applications or services, other websites, or the Internet. We reserve the right to terminate your use of the Website or any related applications or services for violating any of the prohibited uses.

## SECTION 10 – DISCLAIMER OF WARRANTIES; LIMITATION OF LIABILITY

We do not guarantee, represent or warrant that your use of our Website will be uninterrupted, timely, secure or error-free. We do not warrant that any products purchased will meet your expectations. You agree that from time to time we may remove the Website for indefinite periods of time or cancel the Website at any time, without notice to you. You expressly agree that your use of, or inability to use, the Website is at your sole risk.

The Website and all products purchased and services delivered to you through the Website are (except as expressly stated by us) provided 'as is' and 'as available' for your use, without any representation, warranties or conditions of any kind, either express or implied, including all implied warranties or conditions of merchantability, merchantable quality, fitness for a particular purpose, durability, title, and non-infringement.

TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, WE ASSUME NO RESPONSIBILITY OR LIABILITY FOR ANY DAMAGES TO, OR ANY VIRUSES THAT MAY INFECT, YOUR COMPUTER, TELECOMMUNICATION EQUIPMENT, OR OTHER PROPERTY CAUSED BY OR ARISING FROM YOUR ACCESS TO, USE OF, OR BROWSING THE WEBSITE, OR YOUR DOWNLOADING OF ANY INFORMATION OR MATERIALS FROM THE WEBSITE, OR PURCHASING ANY PRODUCTS FROM THE WEBSITE. TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, AND IN NO CASE WHATSOEVER, SHALL PASHION FOOTWEAR, OUR DIRECTORS, OFFICERS, EMPLOYEES, AFFILIATES, AGENTS, CONTRACTORS, INTERNS, SUPPLIERS, SERVICE PROVIDERS OR LICENSORS BE LIABLE FOR ANY INJURY, LOSS, CLAIM, OR ANY DIRECT, INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION LOST PROFITS, LOST REVENUE, LOST SAVINGS, LOSS OF DATA, REPLACEMENT COSTS, OR ANY SIMILAR DAMAGES, OR ANY OTHER PROPERTY OR OTHER DAMAGE RELATED TO THE PURCHASE, DELIVERY OR USE OF ANY OF OUR PRODUCTS, WHETHER BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE), STRICT LIABILITY OR OTHERWISE, ARISING FROM YOUR USE OF ANY OF THE SERVICE OR ANY PRODUCTS PROCURED USING THE SERVICE, OR FOR ANY OTHER CLAIM RELATED IN ANY WAY TO YOUR USE OF THE SERVICE OR ANY PRODUCT, INCLUDING, BUT NOT LIMITED TO, ANY ERRORS OR

OMISSIONS IN ANY CONTENT, OR ANY LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF THE USE OF THE SERVICE OR ANY CONTENT (OR PRODUCT) POSTED, TRANSMITTED, OR OTHERWISE MADE AVAILABLE VIA THE SERVICE, EVEN IF ADVISED OF THEIR POSSIBILITY. BECAUSE SOME STATES OR JURISDICTIONS DO NOT ALLOW THE EXCLUSION OR THE LIMITATION OF LIABILITY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES, IN SUCH STATES OR JURISDICTIONS, OUR LIABILITY SHALL BE LIMITED TO THE MAXIMUM EXTENT PERMITTED BY LAW.

TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, IN THE EVENT OF ANY PROBLEM WITH THIS WEBSITE, CONTENT, OR ANY PRODUCTS OR SERVICES PURCHASED THROUGH THE WEBSITE, YOU AGREE TO CEASE USING THE WEBSITE IMMEDIATELY. TO THE FULLEST EXTENT PERMISSIBLE BY APPLICABLE LAW, IN THE EVENT THAT YOU ARE DISSATISFIED WITH THE PRODUCTS OR SERVICES THAT YOU HAVE PURCHASED ON OR THROUGH THIS WEBSITE, YOU ACKNOWLEDGE THAT PASHION FOOTWEAR HAS MADE NO REPRESENTATIONS AND ISSUED NO WARRANTIES WITH RESPECT TO SUCH PRODUCTS OR SERVICES, AND THAT YOUR IF ANY OF THE FOREGOING LIMITATIONS IN THESE TERMS OF USE ARE HELD INAPPLICABLE OR UNENFORCEABLE FOR ANY REASON, YOU AGREE THAT PASHION FOOTWEAR'S TOTAL LIABILITY TO YOU FOR DAMAGES OF ANY KIND REGARDING THE USE OF THE WEBSITE OR PURCHASE OF ANY PRODUCTS OR SERVICE (REGARDLESS OF THE BASIS FOR THE ACTION) SHALL NOT EXCEED IN THE AGGREGATE THE COST OF THE ITEM(S) PURCHASED PLUS SHIPPING AND SALES TAX, AS APPLICABLE OR A MAXIMUM OF $100.

**SECTION 11 – INDEMNIFICATION**

To the fullest extent permissible by applicable law, you agree to indemnify, defend and hold harmless Pashion Footwear and any of our parent, subsidiaries, affiliates, partners, officers, directors, agents, contractors, licensors, service providers, subcontractors, suppliers, interns and employees, harmless from any claim or demand, including reasonable attorneys' fees, made by any third party due to or arising out of: (i) your use of and access of the Website; (ii) your purchase and use of any products or services, (iii) your violation of any term of these Terms; (iv) your violation of any third party right, including without limitation any copyright, property, or privacy right; or (v) any claim that your use of the Website caused damage to a third party.

**SECTION 12 – CHANGES OR REVISIONS TO TERMS OF USE**

We may update or revise these Terms at any time and from time to time by updating this posting. You should visit this page from time to time to review the then current Website Terms of Use because they are binding on you to the fullest extent permissible by applicable law. Certain provisions of these Terms of Use may be superseded by legal notices or terms located on particular pages of this Website. Your continued use of the Website after any changes to

these Terms of Use are posted will be considered acceptance of those changes. We may also, in the future, offer new services and/or features through the Website (including, the release of new products, tools and resources). Such new features and/or services shall also be subject to these Terms of Use.

**SECTION 13 – DISPUTE RESOLUTION; BINDING ARBITRATION**

YOU UNDERSTAND AND AGREE THAT ALL CLAIMS, DISAGREEMENTS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND PASHION FOOTWEAR, AND ITS OFFICERS, DIRECTORS, EMPLOYEES, REPRESENTATIVES, AGENTS, PARENTS, AFFILIATES, SUBSIDIARIES AND/OR RELATED COMPANIES ARISING OUT OF OR RELATING TO THE WEBSITE, TO THE USE OR ACCESS THEREOF, TO THE ADVERTISING AND OTHER CONTENT ON THE WEBSITE, TO THE PRODUCTS, SERVICES, MATERIALS, PROGRAMS OR OTHER FEATURES OFFERED, ADVERTISED, MARKETED AND/OR SOLD ON OR THROUGH THE WEBSITE, AND/OR TO THESE TERMS OF USE **SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION**, WHICH MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER SUCH CLAIM OR CAUSE OF ACTION ARISES. BECAUSE THE WEBSITE CONCERN INTERSTATE COMMERCE, THE FEDERAL ARBITRATION ACT GOVERNS THE ARBITRABILITY OF ALL DISPUTES. HOWEVER, APPLICABLE CALIFORNIA STATE OR U.S. FEDERAL LAW MAY ALSO APPLY TO THE SUBSTANCE OF ANY DISPUTES. THE ARBITRATION SHALL TAKE PLACE IN LOS ANGELES, CALIFORNIA. THE ARBITRATION SHALL BE ADMINISTERED BY AAA IN ACCORDANCE WITH TITLE 9 OF THE U.S. CODE (UNITED STATES ARBITRATION ACT) UNDER THE AAA'S COMMERCIAL DISPUTE RESOLUTION PROCEDURES AS SUPPLEMENTED BY THE SUPPLEMENTARY PROCEDURES FOR CONSUMER-RELATED DISPUTES (AND AS STATED THEREIN, IF THERE IS A DIFFERENCE BETWEEN THE COMMERCIAL DISPUTE RESOLUTION PROCEDURES AND THE SUPPLEMENTARY PROCEDURES, THE SUPPLEMENTARY PROCEDURES WILL BE USED). **YOU AND WE VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT YOU OR WE HAVE TO A JURY TRIAL.**

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, YOU AND WE AGREE THAT ANY AND ALL DISPUTES, CLAIMS AND CAUSES OF ACTION YOU OR WE MAY HAVE IN CONNECTION WITH OR RELATED TO WEBSITE, TO THE USE THEREOF OR ACCESS THERE TO, TO THE ADVERTISING AND OTHER CONTENT ON THE WEBSITE, TO THE PRODUCTS, SERVICES, MATERIALS, PROGRAMS OR OTHER FEATURES OFFERED, ADVERTISED, MARKETED AND/OR SOLD ON OR THROUGH THE WEBSITE, AND/OR TO THESE TERMS OF USE **WILL BE RESOLVED INDIVIDUALLY, WITHOUT RESORT TO ANY FORM OF CLASS ACTION.** NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER USERS/CONSUMERS OR ARBITRATE, AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY, ANY CLAIM, DISPUTE OR CAUSE OF ACTION IN CONNECTION WITH OR RELATED TO THE WEBSITE, TO THE USE THEREOF OR ACCESS THERETO, TO THE ADVERTISING AND OTHER CONTENT ON THE WEBSITE, TO THE PRODUCTS, SERVICES, MATERIALS, PROGRAMS OR OTHER FEATURES OFFERED, ADVERTISED, MARKETED AND/OR SOLD ON OR THROUGH THE WEBSITE, AND/OR TO THESE TERMS OF USE.

**SECTION 14 – SEVERABILITY**

In the event that any provision of these Terms of Use is determined to be unlawful, void or unenforceable, such provision shall nonetheless be enforceable to the fullest extent permitted by applicable law, and the unenforceable portion shall be deemed to be severed from these Terms of Use, such determination shall not affect the validity and enforceability of any other remaining provisions.

**SECTION 15 – TERMINATION**

The obligations and liabilities of the parties incurred prior to the termination date shall survive the termination of this agreement for all purposes.

These Terms of Use are effective unless and until terminated by either you or us. You may terminate these Terms of Use at any time by ceasing to use our Website.

If in our sole judgment you fail, or we suspect that you have failed, to comply with any term or provision of these Terms of Use, we also may terminate this agreement at any time without notice and you will remain liable for all amounts due up to and including the date of termination; and/or accordingly may deny you access to our Website or any related applications or services (or any part thereof).

**SECTION 16 – ENTIRE AGREEMENT**

The failure of us to exercise or enforce any right or provision of these Terms of Use shall not constitute a waiver of such right or provision.

These Terms of Use, including any and all additional policies referenced herein, and any additional policies or operating rules posted by us on the Website, or in respect to the products or any other related applications or services, constitutes the entire Terms of Use agreement and understanding between you and us and govern your use of the Website or any related applications or services, superseding any prior or contemporaneous agreements, communications and proposals, whether oral or written, between you and us (including, but not limited to, any prior versions of the Terms of Use).

**SECTION 17 – GOVERNING LAW**

These Terms of Use and any separate agreements whereby we provide you products or services shall be governed by and construed in accordance with the laws of the State of California.

## SECTION 18 – CONTACT INFORMATION

Pashion Footwear Customer Service Center: 1880 Santa Barbara Ave., Suite 160, San Luis Obispo, CA 93401.

Questions about the Terms of Use should be sent to us at info@pashionfootwear.com.

# Exhibit B

**Your case number is 01-25-0003-7776**

Please Note: This notice does not constitute the AAA's initiation of the case and does not confirm that all filing requirements have been satisfied. It only acknowledges receipt of filing.

Documents received on

2025-08-10 01:59:31.0 Eastern Time

Billing Address

Vivek Shah
2242462874
newvivekshah@gmail.com
Arbitration

Payment Method

Echeck

Filing Fee Charged

$225.00

Print

# Exhibit C

**AAA**
**Case No. # 01-25-0003-7776**
**VIVEK SHAH v. PASHION FOOTWEAR INC.**

**<u>AMENDED DEMAND</u>**

**Violation of California's Invasion of Privacy Act, Cal. Penal Code § 631(a)
and Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a)**

   I am a resident of California. On at least five different occasions in the past one year, I visited Respondent's website and conducted various searches for information using unique search terms.

   On August 4, 2025, I discovered that the site was simultaneously sending the search terms to the third parties, including Google, Facebook, and Pinterest (collectively, the "tracking entities" or "third-parties"). The tracking entities read or attempted to read or learn the contents of my communications while they were in transit and passing over wire and while being sent and received in the state of California. The search terms which were intended for the owners of the website and not any third-parties.

   Respondent aided, aided, agreed with, employed and conspired with the tracking entities to intercept the search terms because Respondent installed the search bar on its website and knew the search terms would be sent to the tracking entities.

   After I discovered the violations, I then browsed the website, specifically to the Terms[1] to find the proper party for a lawsuit, which contains a binding arbitration agreement and hence this Demand.

   At no time prior to discovering the violation had ever consented to the conduct stated above or agreed to or assented to any privacy policy or terms of the website.

---

[1] The Ninth Circuit Court of Appeals has rejected retroactive consent as a means of complying with Section 631(a). *See Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (holding that retroactive disclosure of data collection on website did not bar CIPA § 631(a) claim). See also <u>In re TikTok, Inc. In-App Browser Priv. Litig.</u>, No. 24 C 2110, 2024 WL 4367849, at *9 (N.D. Ill. Oct. 1, 2024) ("Any retroactive disclosure in a later-issued version would be insufficient to establish effective prior consent.") (citing *Javier*).

1

Respondent procured the third-parties to intercept and endeavored to intercept my electronic communications.

Respondent customized and deployed third party code. As a result, it played an active role in the use of the code to intercept my electronic communications and knowingly and unlawfully used those intercepted communications to guide its advertising and marketing efforts.

It engaged in such conduct for unlawful and tortious purposes, including associating the content of my electronic communications with preexisting consumer profiles and using the contents of my electronic communications in an unauthorized manner. Respondent intended to disclose my personally identifiable communications to third parties so that it could deliver targeted ads to me. Respondent's disclosure and use of my personally identifiable information for unauthorized advertising constitutes a further invasion of privacy beyond the act of intercepting the information alone.

I am seeking statutory damages for the 15 violations, as well as declaratory, public and private injunctive relief.

# Exhibit D

# REPORT OF PRELIMINARY MANAGEMENT HEARING
# AND SCHEDULING ORDER

Vivek Shah (Claimant)

v.

Pashion Footwear Inc. (Respondent)

Case Number: 01-25-0003-7776

Under the Consumer Arbitration Rules of the American Arbitration Association (AAA), a telephonic Preliminary Management Hearing was held on April 10, 2026, before Arbitrator David B. Coher.  The following individuals attended:

Claimant: Vivek Shah

For Respondent: Robert S. Gans, Scale LLLP

By agreement of the parties or by Order of the Arbitrator, the following is now in effect:

I.     Dispositive Motion
   a.  The Respondent's April 8, 2026, letter is considered the Request for Leave, and such leave was granted during the Preliminary Management Hearing on April 10, 2026.
   b.  The Respondent's April 8, 2026, letter will also be considered the moving papers of the Respondent's dispositive motion.
   c.  The Claimant's April 10, 2026, filing will be considered as the Opposition Brief to Respondent's dispositive motion.
   d.  The Respondent may file a Reply Brief on or before Friday, May 1, 2026.

II.    Status Conference
   a.  A status conference will be held on Monday, May 11, 2026, at 10 AM Pacific Time.

III.   Disclosures of the Arbitrator:
   a.  Each party and counsel is obliged to protect the integrity of the arbitration proceeding by promptly providing the Arbitrator with the information necessary to comply with their ongoing duty of disclosure under the Code of Ethics for Arbitrators in Commercial Disputes and the American Arbitration Association.
   b.  Counsel, for themselves and each of their clients, acknowledge the continuing obligation to supplement the identification of potential facts and expert witnesses, consulting experts, counsel participation and representation in any capacity, and any other individual or entity interested in the outcome of the arbitration.
   c.  Any issues concerning the disqualification of the Arbitrator shall be raised promptly with the AAA.

IV.   Communication:
   a.  Communication with the Arbitrator will be conducted via a direct exchange.
   b.  All correspondence shall be submitted directly to the Arbitrator and sent simultaneously to all other case participants who have appeared in the case and the AAA. The Arbitrator may communicate in writing with the parties and will send a copy to the AAA as well. There shall be no direct oral communication between the parties and the Arbitrator except in telephonic conferences or hearings.

This order shall continue in effect unless and until amended by a subsequent order of the Arbitrator.

_____
David B. Coher, Arbitrator

April 12, 2026
Date

# Exhibit E

SCALE LLP

12544 High Bluff Drive
Suite 200
San Diego, California 92130

**Robert S. Gans | Partner**
**Litigation Practice Group Leader**
(858) 342-4656 | rgans@scalefirm.com

April 8, 2026

*By AAA WebFile*
Mr. David B. Coher, Arbitrator
Coher ADR
530 S. Lake Avenue, Pmb 105
Pasadena, California 91101

Re: *Shah v. Pashion Footwear Inc., Case No. 01-25-0003-7776*

Dear Mr. Coher:

Our firm represents respondent Pashion Footwear Inc. ("Pashion"), in the above-referenced matter, which we greatly appreciate your willingness to arbitrate. I write to provide you with significant background information in advance of our initial conference this Friday, April 10, including various items that we believe should be addressed before scheduling a hearing and suggestions for next steps.

General Overview: This claim is representative of the recent surge in cases brought against small businesses, like Pashion, pursuant to the California Invasion of Privacy Act ("CIPA"), Penal Code § 630 et seq., under threat of exorbitant statutory penalties of $5,000 per violation. Claimant, (who, as detailed below, has commenced dozens of these cases), filed his initial demand in August 2025, alleging that Pashion violated Section 631(a) of CIPA by sharing his personal, confidential information through its website. Earlier this week, Claimant filed an amended demand adding claims for relief under the Electronic Communications Privacy Act, 18 U.S.C. § 2511, based upon the same underlying set of facts. Both demands consist of the same generic allegations typical of complaints filed in these actions, which courts have increasingly criticized:

> As the saying goes, time is also money. So when the goal is to file as many lawsuits as possible in the least amount of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to write the original template in such a way that hardly anything needs to be swapped out. Sometimes a plaintiff can get away with this, particularly if defendant is willing to offer a quick cash settlement.

*See Byars v. Hot Topic, Inc.,* 656 F. Supp. 3d 1051, 1060 (C.D. Cal. 2023) (granting motion to dismiss CIPA claim) (emphasis added).

1

**SCALE** LLP

**Robert S. Gans | Partner**
**Litigation Practice Group Leader**
(858) 342-4656 | rgans@scalefirm.com

Applicable Substantive Law/Dispositive Motions:    Pashion intends to move to dismiss these claims on multiple grounds, including the following:

a.  Lack of Standing/Disclosure of Confidential Information:  Claimant lacks standing since he acted as a "tester", rather than as a consumer seeking to purchase goods or services, in that he is a "serial CIPA plaintiff" **who has brought at least 20 identical claims against multiple businesses in disparate industries over the past 7 months alone.** *See* Ex. A (listing cases in which claimant has asserted CIPA claims).  California courts have routinely held that CIPA plaintiffs must credibly allege both of the following to establish standing: (i) any improperly accessed or disclosed information was "sensitive" and "could cause harm if disclosed"; and (ii) a "reasonable expectation of privacy" that the information would not be shared. *See Khamooshi v. Politico LLC,* 786 F. Supp. 3d 1174, 1181-82 (N.D. Cal. 2025) (collecting cases holding that standing is absent "where plaintiffs fail to allege a concrete injury, even if they have asserted a violation of CIPA"); *Rodriguez v. Autotrader.Com, Inc.,* 2025 U.S. Dist. LEXIS 70074 (C.D. Cal. 2025); *Byars v. Sterling Jewelers, Inc.,* 2023 WL 2996686 (C.D. Cal. 2023) (dismissing CIPA claim brought by website tester for lack of standing where "she fully expected that her chat would be recorded so that she could file this action" and therefore lacked any cognizable injury).  Claimant freely admits in his demand that he accessed Pashion's website not to shop for the products offered, but instead to test its privacy protections by typing his own name into the search bar while having "DevTools running side-by-side, so that [he] could see if [his] search terms went to multiple entities."  Accordingly, he had no expectation of privacy in the information shared, and therefore lacks standing to bring this claim.

b.  Failure to Allege Use of Confidential Information By Third Party:  Separate and apart from the standing issue, Claimant has no basis to allege that any of his confidential information was shared with a third party, or that such third party used the information for its own purposes, as required to establish liability under CIPA.[1] To the contrary, the only specific information referenced in Claimant's demand is his own name, which is insufficient to form the basis of a claim.  *See, e.g., Hieting v. Taro Pharmaceutical USA, Inc.,* 728 F. Supp. 3d 1112, 1121-22 (C.D. Cal. 2024) (holding that CIPA plaintiff must plead and prove that confidential information was shared with a third party that "functions less like a tape recorder and more like an independent entity capable of using the information for some other means").

---

[1] Third party involvement is a necessary element of a CIPA violation.  Claimant has no cause of action based solely upon sharing information with Pashion, since a party cannot be guilty of eavesdropping on its own conversations. *See Jones v. Tonal Systems, Inc.,* 751 F. Supp. 3d, 1025, 1033 (S.D. Cal. 2024) ("It is never a secret to one party to a conversation that the other party ins listening to the conversation; only a third party can listen to a private conversation").

2

## SCALE LLP

Robert S. Gans | Partner
Litigation Practice Group Leader
(858) 342-4656 | rgans@scalefirm.com

c. <u>Failure to Allege Contemporaneous Interception</u>. Courts have also uniformly recognized that there can be no liability for sharing communications with a third party under CIPA unless the third party "read or learned the contents of a communication *while the communication was in transit, or in the process of being sent or received.*" *Jones v. Tonal Systems, Inc.,* 751 F. Supp. 3d at 1036, *citing Mastel v. Miniclip SA,* 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021) (emphasis added). Here, Claimant has not alleged as much, and he will have no basis to make such an allegation.

<u>Applicable Arbitration Rules</u>:  Pashion maintains that this matter should be governed by the Commercial Arbitration Rules specified in the governing arbitration agreement, rather than be designated a Consumer Arbitration. Specifically, Rule 1(b) of the Consumer Arbitration Rules provides for their application in case of ***"an agreement between an individual consumer and a business."*** As noted above, while we have no way of knowing how many identical arbitrations Claimant has commenced, we are aware that he has filed nearly two dozen CIPA claims in California state and federal courts in the past 7 months alone, against a variety of different types of business. *See* Ex. A. We also know that, unlike a legitimate "consumer", Claimant had no intention of purchasing any of Pashion's products – women's shoes – based on the fact that he signed onto the website for the express purpose of typing his own name in the search bar and testing the response. This admission, combined with Claimant's litigious history, mandates that he be required to pay his full share in bringing this claim. Further, given the severe, unequal financial burden placed on Pashion stemming from the misclassification of this dispute as a consumer arbitration, we wish to address this issue at the earliest possible opportunity.

<u>Discovery Issues</u>:  We suggest that proceedings in this matter be bifurcated, with initial, limited document discovery directed to Claimant's standing to pursue this action and whether he fits the definition of a consumer under the AAA rules. We believe consideration of these matters at the outset will streamline the issues, promote efficiency, and mitigate unnecessary effort and expense.

Again, your time and consideration is greatly appreciated. Please do not hesitate to contact me if you have any questions.

Respectfully,

*/s/Robert S. Gans*

Robert S. Gans

3

**EXHIBIT A**

## 1. Vivek Shah v. Crain Communications, Inc.

March 18, 2026    |    CA U.S. Dist. Ct., Cent.    |    2:26-CV-03070    |    Civil Rights, Other Federal Civil Rights    |    Judge(s): Judge R. Gary Klausner



## 2. Vivek Shah v. Drexel Chemical Company

February 11, 2026    |    CA U.S. Dist. Ct., Cent.    |    2:26-CV-01605    |    Civil Rights, Other Federal Civil Rights    |    Judge(s): Judge Hernan D. Vera



## 3. Vivek Shah v. Vor Biopharma, Inc.

February 03, 2026    |    CA U.S. Dist. Ct., Cent.    |    2:26-CV-01292    |    Civil Rights, Other Federal Civil Rights    |    Judge(s): Judge Sherilyn Peace Garnett



## 4. VIVEK SHAH, AN INDIVIDUAL v. TEGRIA SERVICES GROUP - US, INC., A DELAWARE CORPORATION

February 03, 2026    |    CA Los Angeles Super. Ct.    |    26STCP00496    |    Civil



## 5. VIVEK SHAH, AN INDIVIDUAL v. TASKHUMAN, INC., A DELAWARE CORPORATION, ET AL.

February 03, 2026    |    CA Los Angeles Super. Ct.    |    26STCP00511    |    Civil



## 6. VIVEK SHAH v. ALYK, INC., A DELAWARE CORPORATION, ET AL.

February 02, 2026    |    CA Los Angeles Super. Ct.    |    26STCP00483    |    Civil



## 7. VIVEK SHAH, AN INDIVIDUAL v. MAISONETTE, INC., A DELAWARE CORPORATION, ET AL.

February 02, 2026    |    CA Los Angeles Super. Ct.    |    26STCP00474    |    Civil



## 8. VIVEK SHAH, AN INDIVIDUAL v. ZENPUSH LLC

January 30, 2026    |    CA Los Angeles Super. Ct.    |    26STCP00548    |    Civil



**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

### 9. VIVEK SHAH, AN INDIVIDUAL v. HIVE BRANDS HOLDINGS, INC., A DELAWARE CORPORATION

January 27, 2026 | CA Los Angeles Super. Ct. | 26STCP00378 | Civil

### 10. VIVEK SHAH v. IDACORP, INC., AN IDAHO CORPORATION

January 22, 2026 | CA Los Angeles Super. Ct. | 26STCP00326 | Civil

### 11. VIVEK SHAH, AN INDIVIDUAL v. UNDERLINING, INC., A DELAWARE CORPORATION

January 21, 2026 | CA Los Angeles Super. Ct. | 26STCP00300 | Civil

### 12. Vivek Shah v. BackOffice Associates, LLC

January 19, 2026 | CA U.S. Dist. Ct., Cent. | 2:26-CV-00848 | Civil Rights, Other Federal Civil Rights | Judge(s): Judge Michelle Williams Court

### 13. Shah v. Russco57, LLC

January 13, 2026 | U.S. Ct. of App., 9th Cir. | 26-249 | Civil Rights, Other Federal Civil Rights | Judge(s): District Judge Percy Anderson

### 14. Vivek Shah v. Talentbridge, Inc.

January 05, 2026 | CA U.S. Dist. Ct., Cent. | 2:26-CV-00222 | Civil Rights, Other Federal Civil Rights | Judge(s): Judge Anne Hwang

### 15. Vivek Shah v. Russco57, LLC

December 22, 2025 | CA U.S. Dist. Ct., Cent. | 2:25-CV-12371 | Civil Rights, Other Federal Civil Rights | Judge(s): Judge Percy Anderson



**17. Vivek Shah v. Peridio, Inc.**

December 22, 2025  |  CA U.S. Dist. Ct., Cent.  |  2:25-CV-12373  |  Civil Rights, Other Federal Civil Rights
|  Judge(s): Judge Stanley Blumenfeld Jr.

**18. Vivek Shah v. Secureworks Corp.**

December 22, 2025  |  CA U.S. Dist. Ct., Cent.  |  2:25-CV-12381  |  Civil Rights, Other Federal Civil Rights
|  Judge(s): Judge Otis D. Wright II

**20. Shah v. JPMorgan Chase Bank, N.A.**

October 08, 2025  |  U.S. Ct. of App., 9th Cir.  |  25-6333  |  Other Federal Statutes, Consumer Credit
|  Judge(s): District Judge Anne Hwang

**22. Vivek Shah v. Card Delivery LLC**

September 09, 2025  |  CA U.S. Dist. Ct., Cent.  |  2:25-CV-08731  |  Civil Rights, Other Federal Civil Rights
|  Judge(s): Judge John F. Walter

# Exhibit G

# Exhibit F

# Exhibit H

**RULING UPON RESPONDENT'S MOTION TO DISMISS**

Vivek Shah (Claimant)

v.

Pashion Footwear Inc. (Respondent)

Case Number: 01-25-0003-7776

Respondent's Motion to Dismiss the Amended Demand's two claims of (1) violation of California Penal Code section 631(a) and (2) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1)(a), is before the Arbitrator.

For the reasons set forth below, the Motion is GRANTED. The claim asserted directly under California Penal Code section 631(a) is dismissed because section 631(a) is a Penal Code provision and does not itself create a private right of action. A civil claim for violation of the California Invasion of Privacy Act must be brought, if at all, through California Penal Code section 637.2. Leave to amend to add a section 637.2 claim will not be granted because the Demand and Amended Demand do not allege facts showing a cognizable injury or actionable violation sufficient to support such a claim.

The ECPA claim is also dismissed because the Amended Demand alleges Respondent's consent, which is sufficient under the Federal one-party consent rule. The Amended Demand does not adequately plead facts bringing the claim within the crime-or-tort exception to that rule. Because the alleged predicate criminal act was the dismissed section 631(a) claim, the asserted exception does not save the ECPA claim.

Procedural History

Claimant initiated this arbitration by filing a Demand. Claimant later filed an Amended Demand. The Amended Demand identifies two asserted statutory violations: California Penal Code section 631(a) and the ECPA.

Respondent moved to dismiss the Amended Demand. Respondent contends that the section 631(a) claim fails because there is no private right of action under

section 631(a) itself, and that any civil claim would have to be brought under Penal Code section 637.2. Respondent also asserts several other grounds that need not be addressed here, as they are now moot.

Applicable Standard of Review

At the pleading stage, the Arbitrator accepts well-pleaded factual allegations as true for purposes of the Motion, but does not accept legal conclusions, labels, or formulaic recitations of statutory elements. A claim must allege facts sufficient to state a legally cognizable basis for relief. Where the defect is legal rather than factual, or where amendment would not cure the defect, dismissal may be entered without leave to amend.

The Penal Code Section 631(a) Claim Is Dismissed

The Amended Demand asserts a claim for violation of California Penal Code section 631(a). Section 631(a) prohibits, among other things, certain unauthorized interceptions, tapping, reading, or use of communications, and provides criminal penalties for violations.

The difficulty with Claimant's pleading is that section 631(a) itself does not provide the civil cause of action pleaded in the Amended Demand. The civil remedy for violations of Chapter 1.5 of Title 15 of the Penal Code, including alleged violations of section 631, is found in Penal Code section 637.2. Section 637.2 provides that "[a]ny person who has been injured by a violation of this chapter may bring an action" against the alleged violator for statutory or actual damages, and it also authorizes injunctive relief.

Accordingly, to the extent the Amended Demand purports to assert a standalone private claim under Penal Code section 631(a), it fails to state a legally cognizable claim. The Motion to Dismiss the section 631(a) claim is therefore granted.

Leave to Amend to Add a Section 637.2 Claim Would Be Denied

In the interest of efficiency, the Arbitrator has considered whether Claimant should be granted leave to amend to assert a claim under Penal Code section 637.2. On the record presented, leave to amend is not warranted.

Vivek Shah v. Pashion Footwear, Inc.                                                          2 of 4
(Case Number: 01-25-0003-7776)

Section 637.2 is the statutory vehicle for civil relief, but it still requires a properly pleaded basis for relief. The statute permits suit by a person "injured by a violation" of the chapter. Although actual damages are not a necessary prerequisite to a section 637.2 claim, the claimant must still allege facts showing an actionable statutory violation and a cognizable basis for relief under the statute.

Neither the Demand nor the Amended Demand alleges facts sufficient to establish such an injury or actionable basis for relief. The pleadings do not identify facts showing that Claimant suffered any injury arising from the alleged conduct, nor do they allege facts sufficient to support the civil remedy that would be required under section 637.2. Merely identifying section 631(a) as a charge does not satisfy the pleading burden for a civil claim under section 637.2.

Because the defect has persisted through the Demand and Amended Demand, and because the existing allegations do not suggest that Claimant can plead a viable Section 637.2 claim, leave to amend to add such a claim will not be granted.

The ECPA Claim Is Dismissed

The Amended Demand also asserts a claim under the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a). Section 2511(1)(a) generally prohibits the intentional interception of wire, oral, or electronic communications.

The ECPA, however, contains a one-party consent provision. Under 18 U.S.C. § 2511(2)(d), it is not unlawful for a person to intercept a communication where that person is a party to the communication or where one party to the communication has given prior consent, unless the communication is intercepted for the purpose of committing a criminal or tortious act.

Here, the Amended Demand alleges Respondent's consent. That allegation is sufficient to bring the claim within the ECPA's one-party consent rule. Claimant's apparent response would have been that the criminal-or-tortious-purpose exception applies because the alleged interception also violated Penal Code section 631(a). But the Section 631(a) claim has been dismissed, and Claimant has not pleaded a viable Section 637.2 claim or other independent criminal or tortious act that would remove Respondent's alleged consent from the protection of Section 2511(2)(d).

Without a sufficiently pleaded predicate criminal or tortious purpose, the one-party consent rule controls. The ECPA claim, therefore, fails as a matter of law and is dismissed.

Order

For the foregoing reasons, Respondent's Motion to Dismiss is GRANTED.

1. Claimant's claim for violation of California Penal Code section 631(a) is dismissed because section 631(a) does not itself provide a private right of action.
2. Claimant's claim under the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a), is dismissed because the Amended Demand alleges Respondent's consent, the ECPA permits one-party consent, and Claimant has not adequately pleaded facts establishing the criminal-or-tortious-purpose exception.

Status Conference Canceled and Case Dismissal

The previously scheduled Status Conference, scheduled for May 11, 2026, is hereby canceled and removed from the case calendar. All claims not specifically addressed herein are denied. The case is hereby dismissed in its entirety.

_____          May 4, 2026
   David B. Coher, Arbitrator                          Date

**AAA**

**Case No. # 01-25-0003-7776**

**VIVEK SHAH v. PASHION FOOTWEAR INC.**

## OPPOSITION TO RESPONDENT'S MOTION TO DISMISS AND REQUEST TO RECLASSIFY THIS MATTER AS A COMMERCIAL ARBITRATION

### I. INTRODUCTION

The motion is fundamentally defective for three separate reasons.

First, Respondent's dismissal arguments are built around federal Article III standing doctrine, as though this arbitration were a federal court proceeding. It is not. The arbitrator's authority does not come from Article III of the United States Constitution. It comes from the parties' arbitration agreement and the AAA rules incorporated into that agreement. Respondent's repeated reliance on federal standing cases therefore misses the threshold point. This tribunal is not exercising federal judicial power.

Second, Respondent repeatedly misstates both my Amended Demand and the governing law. I have not alleged a claim under Penal Code section 632. I have not alleged that section 631(a) requires "confidential information," "sensitive information," or any similar showing borrowed from section 632 or federal standing cases. I also did not allege in my Amended Demand that I typed my own name into the search bar while "DevTools" was open side-by-side in order to test the site. That statement does not appear in the Amended Demand, which is the operative pleading.

Third, Respondent's request to reclassify this matter as a commercial arbitration ignores the text of its own contract. Respondent drafted a clause stating that arbitration shall be administered by AAA "under the AAA's Commercial Dispute Resolution Procedures as supplemented by the Supplementary Procedures for Consumer-Related Disputes (and as stated therein, if there is a difference between the Commercial Dispute Resolution Procedures and the Supplementary Procedures, the Supplementary Procedures will be used)." Respondent cannot selectively quote only the part it likes while ignoring the language that expressly elevates the consumer procedures where there is any conflict. Any ambiguity in Respondent's own clause must be construed against Respondent as the drafter.

### II. RESPONDENT MISSTATES THE OPERATIVE AMENDED DEMAND

A threshold problem with the motion is that it attributes allegations to me that do not appear in the operative Amended Demand.

1

Respondent asserts that I "freely admit[] in [my] demand" that I accessed Pashion's website not to shop, but instead to test its privacy protections by typing my own name into the search bar while having "DevTools running side-by-side, so that [I] could see if [my] search terms went to multiple entities." That allegation is nowhere in the Amended Demand. The Amended Demand actually alleges the following:

- I am a resident of California.

- On at least five different occasions in the prior year, I visited Respondent's website and conducted various searches for information using unique search terms.

- On August 4, 2025, I discovered that the site was simultaneously sending those search terms to third parties, including Google, Facebook, and Pinterest.

- Those third parties read or attempted to read or learn the contents of my communications while they were in transit and passing over wire and while being sent and received in California.

- The search terms were intended for the owners of the website and not for any third parties.

- Respondent aided, agreed with, employed, and conspired with the tracking entities to intercept the search terms because Respondent installed the search bar on its website and knew the search terms would be sent to the tracking entities.

- After I discovered the violations, I then browsed the website specifically to the Terms to find the proper party for a lawsuit, which contained a binding arbitration agreement.

- At no time prior to discovering the violation had I consented to the conduct alleged or agreed to or assented to any privacy policy or terms of the website.

That is what my Amended Demand says. Respondent's contrary factual narrative is invented. A dispositive motion built on factual assertions that do not appear in the operative demand should be denied.

## III. THIS ARBITRATION IS NOT GOVERNED BY ARTICLE III STANDING DOCTRINE

Respondent's principal dismissal argument is framed as a lack-of-standing argument. It says I am a "tester," not a consumer, that I had no reasonable expectation of privacy, and that I did not disclose sufficiently private or sensitive information. Those arguments are borrowed from federal Article III case law. They do not govern this arbitration.

This is not a federal court. The arbitrator's power here is contractual, not constitutional. The source of authority is the parties' arbitration agreement together with the AAA rules incorporated into that agreement.

2

The AAA Consumer Rules expressly provide that the arbitrator has the power to rule on his own jurisdiction, including objections regarding the existence, scope, or validity of the arbitration agreement and the arbitrability of any claim. The rules further provide that the arbitrator shall interpret and apply those rules as they relate to the arbitrator's powers and duties.

That matters because Respondent's authorities on federal standing address whether a federal court may exercise the judicial power of the United States under Article III. That inquiry is unique to federal courts. It does not define whether a private arbitrator may hear a statutory dispute under a private arbitration agreement.

Respondent's motion effectively assumes that the arbitrator's powers are somehow granted by Article III. That is frivolous. If Respondent truly means that Article III defines the arbitrator's power, then Respondent is not really making a standard merits argument at all. It is really attacking the existence of arbitral power itself. But that would directly contradict the arbitration agreement on which Respondent relies.

The better and correct view is simple: the arbitrator's jurisdiction arises from the agreement, not the Constitution. Respondent's federal standing cases therefore do not establish a basis to dismiss this arbitration.

## IV. SECTION 631(a) DOES NOT REQUIRE "CONFIDENTIAL" OR "SENSITIVE" INFORMATION

Respondent repeatedly argues that I failed to allege disclosure of "confidential information" or "sensitive information." That is a false premise.

I did not allege a claim under Penal Code section 632. Section 632 deals with "confidential communications." Section 631(a) is different. My claim is under section 631(a), which broadly prohibits, among other things, unauthorized interception or attempts to learn the contents of communications in transit. Respondent is trying to import section 632 concepts into a section 631(a) case. That is improper. The distinction matters. Section 632 is the statute that turns on "confidential communication" concepts. Section 631(a) does not use that same framework. The motion repeatedly blurs that line and then attacks a strawman version of my claim.

That is why Respondent's repeated references to "personal information," "private information," and "sensitive information" are misplaced. Section 631(a) does not require me to plead that my search terms were medically sensitive, financially sensitive, embarrassing, or otherwise "confidential" in the section 632 sense. My theory is that Respondent caused third parties to read or attempt to read the contents of my communications while those communications were in transit. That is the theory alleged.

Respondent's effort to convert this into a confidentiality case should be rejected.

## V. RESPONDENT'S "REASONABLE EXPECTATION OF PRIVACY" ARGUMENT FAILS

Respondent argues that I had no reasonable expectation of privacy and therefore have no claim. That argument fails for multiple reasons.

First, it again depends on a fabricated factual premise. Respondent says I supposedly admitted I went to the site to test it while watching DevTools and using my own name as a query. The Amended Demand says no such thing.

Second, even apart from the false factual premise, Respondent's argument still improperly imports a federal standing concept into arbitration.

Third, the assertion that section 631(a) itself requires a reasonable expectation of privacy is wrong. The statute does not impose that requirement as an element of liability in the way Respondent suggests. See *Webb v. Louw, No*. E032249, 2003 WL 22017840, at *14 (Cal. Ct. App. Aug. 27, 2003) ("Louw has failed to cite any authority for her proposition that Penal Code section 631 requires a plaintiff to prove that he or she had an expectation of privacy. Whether or not Webb had a reasonable expectation of privacy as to the phone conversation with her children has no bearing upon whether Louw's actions violated sections 631 or 637."); *Bornstein v. Sonic Auto., Inc*., No. G047251, 2014 WL 431203, at *7 (Cal. Ct. App. Feb. 3, 2014) ("Unlike section 632, which proscribes the recording of communications of which the parties have a reasonable expectation of privacy, section 631 broadly proscribes, inter alia, the interception of any communication without the consent of all the parties involved. Section 631 does not describe the type of consent required of the participants to a communication before the communication may be lawfully monitored.").

Respondent cites federal decisions that discuss expectation-of-privacy concepts in the context of federal standing or federal court jurisdiction. But again, those cases do not rewrite the elements of section 631(a), and they certainly do not convert a contractual arbitration into a federal court proceeding.

Respondent is therefore doing two things at once: it is misstating my allegations and misstating the governing legal framework. Neither is a valid basis for dismissal.

## VI. THE AMENDED DEMAND ADEQUATELY ALLEGES THIRD-PARTY INTERCEPTION AND ACTIVE PARTICIPATION BY RESPONDENT

Respondent next argues that I did not adequately allege use by a third party or third-party involvement. That is wrong.

My Amended Demand expressly alleges that the site was simultaneously sending the search terms to third parties including Google, Facebook, and Pinterest. It alleges that those entities read or attempted to read or learn the contents of my communications while they were in transit. It alleges that Respondent installed the search bar, knew the search terms would be sent to the tracking entities, and aided, agreed with, employed, and conspired with those entities to intercept the search terms.

4

The Amended Demand further alleges that Respondent customized and deployed third-party code, played an active role in the use of the code to intercept my electronic communications, knowingly used those intercepted communications to guide advertising and marketing efforts, associated the contents of my communications with preexisting consumer profiles, and intended to disclose my personally identifiable communications to third parties so that it could deliver targeted ads to me.

Those are not bare legal labels. They are specific allegations describing the third parties involved, the conduct alleged, the timing of the interception, and Respondent's own active role. Respondent may dispute those allegations on the merits. But it cannot fairly claim they are absent.

## VII. THE AMENDED DEMAND EXPRESSLY ALLEGES CONTEMPORANEOUS INTERCEPTION

Respondent also argues that I failed to allege contemporaneous interception. That is directly contradicted by the text of the Amended Demand. The Amended Demand alleges that the third parties "read or attempted to read or learn the contents of my communications while they were in transit and passing over wire and while being sent and received in the state of California." That is a direct allegation of contemporaneous interception. Respondent is free to dispute whether the evidence will ultimately support that allegation. But Respondent is not free to pretend that the allegation does not exist.

## VIII. RESPONDENT'S PLEADING ARGUMENT FAILS UNDER THE AAA RULES

Respondent repeatedly argues that I supposedly failed to plead enough facts. That argument fails under the very arbitral rules Respondent drafted into its agreement. AAA Consumer Rule R-4 requires a demand to include a statement setting forth the nature of the claim, the relief sought, the amount involved, a brief explanation of the dispute, and related basic filing information. The rules also say that parties are encouraged to provide sufficient detail to make the dispute clear to the arbitrator. They do not require court-style pleading.

That point alone defeats much of Respondent's motion. If Respondent wanted heightened, court-style pleading standards, it could have drafted an arbitration clause that expressly imposed them. It did not. Instead, it drafted a clause requiring AAA administration. It cannot force individuals into arbitration and then complain that the demand is not formatted like a federal complaint drafted under the Federal Rules of Civil Procedure.

My Amended Demand easily satisfies Rule R-4. It identifies the statutes, the conduct challenged, the third parties involved, the timing of discovery, the theory of interception, the number of violations alleged, and the relief sought. That is more than enough to put Respondent and the arbitrator on notice of the dispute.

Respondent cannot have it both ways. If it wanted court-style pleading, it should not have unilaterally bound individuals to arbitration under AAA rules that require only a brief explanation of the dispute.

## IX. RESPONDENT'S RELIANCE ON *BYARS* IS MISPLACED

Respondent begins its letter by quoting language from *Byars v. Hot Topic, Inc.* about copy-and-paste complaints and quick settlements. That quote is meaningless here. It is dicta, not a substitute for legal analysis. It does not establish an element of a section 631(a) claim. It does not establish a pleading rule for AAA arbitration. It does not prove that my allegations are false. It does not prove that this demand is insufficient. And it certainly does not convert an arbitrator into a federal Article III judge. Respondent is attempting to use rhetoric about broader CIPA litigation trends as though that somehow resolves the present dispute. It does not. This arbitration must be decided based on the actual arbitration agreement, the AAA rules, and the allegations actually made in the operative Amended Demand.

## X. THE CONTRACT ITSELF UNDERMINES RESPONDENT'S RECLASSIFICATION REQUEST

Respondent's request to reclassify this matter as a commercial arbitration is particularly weak because it conflicts with the actual text of the contract it drafted. The arbitration provision states in all caps:

> THE ARBITRATION SHALL BE ADMINISTERED BY AAA IN ACCORDANCE WITH TITLE 9 OF THE U.S. CODE (UNITED STATES ARBITRATION ACT) UNDER THE AAA'S COMMERCIAL DISPUTE RESOLUTION PROCEDURES AS SUPPLEMENTED BY THE SUPPLEMENTARY PROCEDURES FOR CONSUMER-RELATED DISPUTES (AND AS STATED THEREIN, IF THERE IS A DIFFERENCE BETWEEN THE COMMERCIAL DISPUTE RESOLUTION PROCEDURES AND THE SUPPLEMENTARY PROCEDURES, THE SUPPLEMENTARY PROCEDURES WILL BE USED).

That language is fatal to Respondent's selective reading. Respondent wants to quote AAA consumer definitions when it thinks they help reclassification, but ignore the contract language stating that the consumer-related procedures supplement the commercial procedures and control in the event of a difference. Respondent cannot do that.

At minimum, the clause is not a clean, exclusive election of purely commercial rules. It expressly invokes consumer-related procedures and expressly elevates them over the commercial procedures in the event of a conflict. To the extent there is any ambiguity, that ambiguity is construed against Respondent because Respondent drafted the clause.

6

## XI. THE TERMS APPLY TO WEBSITE USERS, NOT JUST COMPLETED PURCHASERS

Respondent tries to argue that I am not a consumer because I allegedly did not intend to buy women's shoes. That argument also fails under the text of the Terms. The Terms state that Pashion offers the Website, including "all information, products for purchase, tools and other services" available from the Website. They further state that the Terms "apply to all users of the Website, including without limitation users who are browsers, vendors, customers, merchants, and/or contributors of Content." The Terms also say: "To be clear, by using our Website, you are effectuating these Terms of Use as a binding agreement."

That language is broad. It is not limited to completed purchasers. It expressly includes browsers. Respondent therefore cannot credibly argue that only someone who completed a purchase qualifies for consumer treatment under the agreement it drafted. The contract was written to govern use of the website itself, not merely final checkout transactions. And that makes sense because the alleged misconduct here arose from my use of the website and its search functionality. The contract expressly applies to that conduct.

## XII. RULE R-1(b) OF THE AAA CONSUMER RULES FITS THIS DISPUTE, AND RESPONDENT DOES NOT SHOW OTHERWISE

Respondent's effort to strip this matter of its consumer character fails under the AAA's own definition. Rule R-1(b) states:

> The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.

First, this is "an agreement between an individual consumer and a business." I am an individual. Respondent is a business. Respondent operates a retail consumer website selling footwear and related consumer goods directly to members of the public. Nothing about this relationship is business-to-business, negotiated, or commercial in the enterprise sense.

Second, Respondent has "a standardized, systematic application of arbitration clauses with customers." That is exactly what website Terms of Use are. Respondent drafted one set of Terms and applies them uniformly to all website users. The Terms say that by "accessing or using any part of the Website, you agree to and shall be bound by these Terms of Use." They also say the Terms apply to "all users of the Website, including without limitation users who are browsers, vendors, customers, merchants, and/or contributors of Content." That is a standardized,

systematic application of an arbitration clause. It is not individualized. It is not negotiated. It is presented on a take-it-or-leave-it basis.

Third, the rule requires that "the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices." That element is also satisfied. Respondent's footwear products are standardized consumer retail goods sold through a public website. The associated Terms are plainly non-negotiable or primarily non-negotiable. No ordinary website user is negotiating the arbitration clause, the venue clause, the waiver provisions, the limitations language, the account terms, or the ordering terms. Respondent drafted them once and applied them across the board.

Fourth, Rule R-1(b) requires that "[t]he product or service must be for personal or household use." That requirement is met as well. Respondent sells footwear to ordinary consumers through a retail website. Shoes sold on a direct-to-consumer fashion website are paradigmatic personal-use goods. Respondent's Terms discuss products for purchase, shipping, billing, returns, promotions, account information, text-message notices, and consumer-facing website use. This is not a wholesale supply agreement, enterprise platform agreement, or other commercial-use arrangement. It is consumer retail.

Fifth, the Terms are written broadly enough to cover website use itself, not merely completed checkout transactions. That matters because the alleged misconduct here arose from my use of the website and its search functionality. Respondent's own Terms state that Pashion offers the Website, including "all information, products for purchase, tools and other services" available from the Website, and that the Terms apply to all users, including browsers. Respondent therefore cannot evade the consumer framework by arguing that only a completed purchaser counts, when its own agreement expressly governs users who browse and use the site.

Sixth, the arbitration clause itself confirms the consumer character of the agreement. Respondent did not draft a clause stating that only the Commercial Rules apply. Instead, it drafted a clause stating that arbitration will proceed under the Commercial Dispute Resolution Procedures "as supplemented by the Supplementary Procedures for Consumer-Related Disputes," and then added that "if there is a difference between the Commercial Dispute Resolution Procedures and the Supplementary Procedures, the Supplementary Procedures will be used." That language is powerful. It shows that Respondent itself contemplated consumer-related treatment and expressly gave the consumer-related procedures controlling force in the event of any difference.

Respondent's only apparent answer is to argue that I should not count as a consumer because I allegedly did not intend to buy shoes and because I have filed other privacy cases. But Rule R-1(b) does not ask either of those questions.

Rule R-1(b) focuses on the nature of the agreement, the business's standardized and systematic use of the clause, the non-negotiable character of the terms, and whether the product or service is for personal or household use. Respondent's arguments do not rebut those elements. They simply attack me personally and try to replace the AAA's actual definition with an invented one.

Just as important, Respondent makes no real affirmative argument for why the Commercial Rules would apply instead. That omission is telling. Respondent does not identify any language in the contract stating that only the Commercial Rules govern to the exclusion of consumer procedures. It does not explain how a standardized, non-negotiable website agreement for consumer footwear somehow becomes a commercial contract. It does not argue that I am a business entity, that this was a negotiated business-to-business transaction, that the goods were intended for resale, or that the agreement concerned enterprise services. It does not identify any feature that would make this dispute genuinely commercial in character.

Instead, Respondent offers only a negative argument: it says I supposedly should not be treated as a consumer. But even if that were true, that still would not establish that the Commercial Rules apply. Reclassification requires an actual basis for commercial treatment. Respondent never supplies one.

If Respondent wants commercial reclassification, it should have to show why this dispute falls outside Rule R-1(b) and inside a genuinely commercial framework. It has not done so. It has not shown that the agreement is negotiated. It has not shown that the agreement is business-to-business. It has not shown that the goods or services are commercial rather than personal or household in nature. It has not shown that the consumer-related procedures expressly referenced in its own clause should be ignored. And it has not reconciled its position with the clause's express statement that where there is a difference, the supplementary consumer procedures control.

## XIII. TO THE EXTENT RESPONDENT WANTS COURT-TYPE PLEADING OR ARTICLE III FILTERS, THAT IS A CONSEQUENCE OF ITS OWN DRAFTING CHOICES

Respondent chose to draft a mandatory arbitration clause. Respondent chose to incorporate AAA procedures. Respondent chose to apply those Terms broadly to website use and browsing. Respondent cannot now insist that this arbitration function as though it were federal court litigation subject to Article III constitutional limits and court-style pleading rules. If businesses want federal pleading doctrines, federal motion practice, and federal jurisdictional thresholds, they can litigate in court. If instead they draft adhesion-style website terms compelling AAA arbitration, they must live with the arbitral rules and arbitral framework they selected. They cannot have it both ways.

Dated: April 10, 2026

9

Respectfully submitted,

Vivek Shah
Claimant

SCALE LLP

12544 High Bluff Drive
Suite 200
San Diego, California 92130

**Robert S. Gans | Partner**
**Litigation Practice Group Leader**
(858) 342-4656 | rgans@scalefirm.com

May 1, 2026

*By AAA WebFile*
Mr. David B. Coher, Arbitrator
Coher ADR
530 S. Lake Avenue, Pmb 105
Pasadena, California 91101

Re:  *Shah v. Pashion Footwear Inc., Case No. 01-25-0003-7776:  Reply Of Pashion Footwear In Further Support Of Motion To Dismiss*

Dear Mr. Coher:

Pursuant to the Scheduling Order issued in the above-referenced matter, dated April 12, 2026, we respectfully submit this reply letter brief on behalf of Respondent, Pashion Footwear, Inc. ("Pashion"), in further support of its motion to: (i) dismiss Claimant's demand; (ii) reclassify this matter for administration under the AAA Commercial Arbitration Rules, rather than the Consumer Rules; and (iii) to the extent the claim is not dismissed, order that proceedings in this matter be bifurcated, with initial discovery directed to Claimant's standing to pursue this action, whether he fits the definition of a "consumer" as contemplated by the AAA rules, the basis for his allegations, and the damages he has suffered.

*Summary of Argument*

Claimant's principal contention, from which most of his other arguments flow, is that the Arbitrator should ignore his initial demand, filed nearly 9 months ago, making clear that he acted as a "tester" who has no standing to bring this claim and suffered no cognizable injury whatsoever. Claimant fails to grasp that he cannot make his prior admissions magically disappear in Orwellian fashion by filing an amended demand on the eve of the initial hearing.

Claimant's initial demand alleges that Pashion violated Section 631(a) of the California Invasion of Privacy Act ("CIPA") based on the following allegations:

> On August 4, 2025, I went to [Pashion's] website . . . which includes a search bar . . . I typed my name "VIVEK" into the search bar, while I had DevTools running side-by-side, so that I could see if my search terms were going to a different entity, and if so, where they were going. As soon as I hit 'enter,' I noticed that the search terms went to multiple entities. Specifically: Google, Facebook, Pinterest, and others. The screenshots attached to this demand are true and correct screenshots

1

SCΛLE LLP

Robert S. Gans | Partner
Litigation Practice Group Leader
(858) 342-4656 | rgans@scalefirm.com

evincing this. While these are the entities that the contents of communications are going to that are on the front end of the website, I have no way to check what other possible entities my search terms might be going to additionally in the back end of the website. I repeated the search a few times to verify my findings.

*See* AAA Webfile, 2025-08-10 Demand (the "Original Demand").

Claimant clearly understands that these prior admissions, which he let stand for 8 months before submitting an amendment on the eve of the initial hearing, fatally undermine his arguments. Yet there is no precedent to exclude from consideration factual admissions made by a party in the process of prosecuting its claim. Such a result would be especially egregious here, where Claimant attached to his Original Demand the transcript of the session in which he typed his name into the search bar on the Pashion website. *Id.* Indeed, Claimant's argument and last minute attempt to change his story smacks of cynicism and the lack of credibility with which he approaches these claims as a professional plaintiff, as set forth in Pashion's prior submission.

Claimant's status as a tester fatally precludes him from bringing this claim. First, contrary to Claimant's argument, he has no standing to bring this action under either federal or California law. Second, even assuming that standing exists, his status as a tester and his conscious, voluntary decision to share his first name with the website constitutes consent, since he had every expectation that there was at least a strong possibility that this information would be shared. Third, the fact that he had no reasonable expectation of privacy means that he suffered no injury.

*Claimant Lacks Standing Under California Law*

The standing requirements for CIPA claims are the same under federal and state law. California courts have long held that, in the absence of a statutory exception, plaintiffs may only pursue claims in which they are "beneficially interested", which is "equated . . . to the injury-in-fact prong of the Article III test for standing in the federal courts." *See Limon v. Circle K Stores Inc.,* 84 Cal. App. 5th 671, 698, 700 (5th Dist. 2022) (finding lack of standing to pursue disclosure violations under Fair Credit Reporting Act) (citations omitted). Thus, Claimant must have suffered "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Muha v. Experian Information Solutions, Inc.,* 106 Cal App. 5th 199, 208 (4th Dist. 2024) (dismissing claim) (citations omitted).

CIPA does not provide an exception to California's beneficial interest test. Not only does the statute expressly require an actual and serious invasion of privacy, (as explained in detail below), but it also limits standing to bring a civil action for damages to those who have been "*injured by a violation*", *see* Penal Code § 637.2(a) (emphasis added). In the absence of such injury, Claimant has no standing to seek monetary relief. Thus, the same considerations that deprive Claimant of standing to bring his claim in federal court apply with equal force under California law. *See Rodriguez v. Autotrader.com, Inc.,* 2025 WL 1122387 at * (C.D. Cal. 2025) (holding that "tester seeking to file lawsuits for invasions of her privacy . . . had no expectation of privacy, and thus,

2

SCALE LLP

Robert S. Gans | Partner
Litigation Practice Group Leader
(858) 342-4656 | rgans@scalefirm.com

no injury in fact"); *Byars v. Sterling Jewelers, Inc.,* 2023 WL 2996686 at \*4 (C.D. Cal. 2023) (finding that website tester lacked standing where "she fully expected that her chat would be recorded so that she could file this action"). *See also Khamooshi v. Politico LLC,* 786 F. Supp. 3 1174, 1181-82 (N.D. Cal. 2025) (finding lack of "concrete injury" to provide standing to pursue CIPA violation in absence of *unauthorized* sharing of confidential information).

Based on the foregoing, Claimant lacks standing to bring this action under federal or California law. Nevertheless, to the extent that there is any doubt, Pashion requests that it be permitted to obtain discovery from Claimant prior to any other proceedings in this matter, which would include taking his deposition under oath, prior to making a final determination on this issue.

*Claimant Cannot Maintain Any Element Of A Claim Under Section 631(a) of CIPA*

Courts have uniformly recognized that Section 631(a) of CIPA proscribes the following conduct by any person:

- who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or

- who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state, or

- who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or

- who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

*See Esparza v. Kohl's, Inc.,* 723 F. Supp. 3d 934, 940-41 (S.D. Cal. 2024) (citations omitted). While the first three clauses encompass "three distinct and mutually independent patterns of conduct", the fourth imposes liability on "anyone who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Id.* (describing the three "distinct and mutually independent patterns of conduct" proscribed by Section 631(a) as "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities").

3

SCALE LLP

**Robert S. Gans | Partner**
**Litigation Practice Group Leader**
(858) 342-4656 | rgans@scalefirm.com

Here, Claimant's Amended Demand, dated April 7, 2026 (the "Amended Demand") alleges that Pashion:

> procured . . . third-parties to intercept and endeavored to intercept my electronic communications . . . for unlawful and tortious purposes, including associating the contents of my electronic communications in an unauthorized manner. [Pashion] intended to disclose my personally identifiable communications to third parties so that it could deliver targeted ads to me. [Pashion's] disclosure and use of my personally identifiable information for unauthorized advertising constitutes a further invasion of privacy beyond the act of intercepting the information alone.

For the reasons set forth below, none of these boilerplate allegations provide a sufficient basis to allege that Pashion violated Section 631(a), nor do they provide an adequate factual basis for Pashion to defend itself against the allegations.

*The First Prong Of Section 631(a) Does Not Apply To Internet Communications*

Courts have uniformly recognized that the plain language of the first prong of Section 631(a) precludes its application to internet communications. *See, e.g., Gutierrez v. Converse, Inc.,* 2025 WL 1895315 at *1 (granting summary judgment on first prong where "[t]he record is devoid of evidence that [alleged wrongdoer] made an unauthorized connection through a telephone wire, line, cable, or instrument"); *Jones v. Tonal Systems, Inc.,* 751 F. Supp. 3d 1025, 1032 (S.D. Cal. 2024) (recognizing that intentional wiretapping prohibited by first prong of Section 631(a) is limited to "telegraphic or telephone wire, line, cable or instrument") (citation omitted); *Cody v. Ring LLC,* 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (holding that "[c]lause one of Section 631(a) prohibits telephonic wiretapping, which does not apply to the internet"); *Williams v. What If Holdings LLC,* 2022 WL 17869275 at *2 (N.D. Cal. 2022) (same); *In re Google Assistant Privacy Litig.,* 457 F. Supp. 3d 797, 825 (N.D. Cal 2020) (same). The Amended Demand does not allege that Pashion or any other entity made an unauthorized connection through a telephone wire, line, cable, or instrument, mandating dismissal under this prong.

*The Party Exemption Precludes Liability Under The Second Prong Of Section 631(a)*

California courts have long held that a party to a conversation cannot be guilty of "eavesdropping" under CIPA. "It is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen to a private conversation." *Jones v. Tonal Systems, Inc.,* 751 F. Supp. 3d at 1033 (dismissing CIPA claim), *citing Javier v. Assurance IQ, LLC,* 649 F. Supp. 3d 891, 898 (N.D. Cal. 2023). *See also Byars v. Hot Topic, Inc.,* 656 F. Supp. 3d at 1064-65 (collecting cases holding that a party cannot eavesdrop on itself under CIPA). Therefore, claims for eavesdropping under the second prong of Section 631(a) should be dismissed unless the plaintiff "plausibly allege[s] that the third-party . . . has the capability to use the communications for a purpose other than one on behalf of the defendant." *Heiting v. Taro Pharmaceuticals USA, Inc.,* 728 F. Supp. 3d 1112, 1121-22 (C.D. Cal. 2024) (citation omitted) (further recognizing that

4

**SCALE** LLP

**Robert S. Gans | Partner**
**Litigation Practice Group Leader**
(858) 342-4656 | rgans@scalefirm.com

"plaintiff must at least plead some non-conclusory factual allegations . . . demonstrating that the third party . . . functions less like a tape recorder and more like an independent entity capable of using the information for some other means").

Here, Claimant fails to specify any basis for his conclusory allegations that Pashion's "site was simultaneously sending the search terms [i.e., Claimant's first name] to the third parties, including Google, Facebook, and Pinterest", nor does he allege that any of these parties collected the information (again, Claimant's first name), on behalf of themselves rather than Pashion. *See* Amended Demand.

Courts have routinely dismissed virtually identical complaints that contain "no facts [ ] to suggest that [the third party] intercepted and used the data itself." *See Williams v. What If Holdings LLC,* 2022 WL 17869275 at *2 (N.D. Cal. 2022). In *Williams*, the court rejected plaintiff's argument that the consequences of dismissal would be that "website owners can always circumvent Section 631(a) by hiring a vendor to record communications", instead recognizing that the key issue is whether the third-party "*uses* the gathered information in some way". *Id.* at *3 (citations omitted) (emphasis added). Where, as here, the information shared is limited to Claimant's first name, and his demand is silent as to any use that a third party made of this information or that such interception was a communication used for its own benefit, dismissal is warranted.

>  *The Amended Petition Fails To State A Claim For Interception Of Communications Under The Second Prong of Section 631(a)*

Even if the Party Exemption did not preclude liability, Claimant's demand should still be dismissed for failure to allege that a third party "intercepted" his communications within the meaning of CIPA. Courts have long recognized that there can be no liability under Section 631(a) for intercepting communications unless the third party "read or learned the contents of a communication *while the communication was in transit, or in the process of being sent or received.*" *Jones v. Tonal Systems, Inc.,* 751 F. Supp. 3d at 1036, *citing Mastel v. Miniclip SA,* 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021) (emphasis added). Indeed, the 9th Circuit has consistently interpreted Section 631(a) to "preclude[] interception claims with respect to communications accessed when the communications are 'in electronic storage.'" *Id., citing Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868, 877 (9th Cir. 2002). Thus, to survive a motion to dismiss, "factual allegations regarding the method, or nature, of interception, are required." *Heitling v. Taro Pharmaceuticals USA, Inc.,* 728 F. Supp. 3d at 1126 (granting motion to dismiss aiding and abetting interception claim) (citations omitted).

Just as the Amended Demand fails to allege that a third party used Claimant's information for its own benefit, it also fails to set forth "factual allegations regarding the method, or nature, of interception." *Id.* Pashion should not be forced to endure the time and expense of defending this

5



Robert S. Gans | Partner
Litigation Practice Group Leader
(858) 342-4656 | rgans@scalefirm.com

case based solely upon Claimant's assertion of boilerplate allegations devoid of any factual basis. The claim should be dismissed.[1]

*This Matter Should Be Arbitrated Under The Commercial Arbitration Rules*

As the arbitrator is undoubtedly aware, the consumer rules were designed to make the dispute resolution process more affordable and accessible to legitimate retail customers of companies who would otherwise use their superior financial resources to prevent redress. They were not intended to empower individuals like Claimant, who is believed to make his living from filing hundreds of identical cookie cutter claims against small companies, from whom he has no interest in purchasing products, simply to extract tens of thousands of dollars in quick settlement payments and move on to his next target. Indeed, there can be no reasonable dispute that Claimant is not a "consumer" – a term which, while not expressly defined under the AAA Rules, is defined under the JAMS Consumer Arbitration Minimum Standards, (a copy of which is annexed hereto), as "an individual *who seeks or acquires any goods or services, primarily for personal, family or household purposes . . .*". This common sense definition, which should be persuasive here, does not apply in any respect to Claimant's aggressive litigiousness, which includes bringing over 20 identical CIPA claims in federal and state courts over the last 7 months alone, along with an unknown number of arbitrations. At a minimum, before this matter proceeds further, Pashion respectfully requests that it be permitted to obtain discovery from Claimant directed to the issue of his status as a "consumer", which would include requiring him to sit for a deposition.[2]

*Further Proceedings Should Be Bifurcated To Allow For Discovery Of Claimant*

To the extent this action is not dismissed in its entirety, Pashion respectfully submits that further proceedings be bifurcated to permit discovery directed to Claimant's standing to pursue his claims, (including his status as a professional plaintiff). Pashion believes that, for the reasons discussed above, such discovery will provide additional support for its motion, while streamlining the issues, promoting efficiency, and mitigating unnecessary effort and expense.

*Conclusion*

Claimant's arguments, his extensive history of bringing virtually identical, conclusory CIPA claims against dozens (if not hundreds) of companies, and his attempt to erase the admissions contained in his Initial Demand, all constitute evidence of his cynical use of the consumer arbitration rules for his own financial gain. These efforts should not be rewarded. Pashion

---

[1] In the absence of a violation of the first 2 prongs of Section 631(a), there cannot be a violation for aiding and abetting a violation of CIPA, rendering consideration of the second 2 prongs moot.

[2] Accordingly, Claimant's argument that Pashion should not only be forced to defend this baseless demand, but also shoulder all of the administrative costs associated with its defense because it "chose to draft a mandatory arbitration clause" is ludicrous. Pashion never anticipated that someone like Claimant would abuse what was designed to be a low-cost system to resolve legitimate consumer complaints into a business model for achieving quick payments from small businesses with little or no effort or expense.

SCALE LLP

**Robert S. Gans | Partner**
**Litigation Practice Group Leader**
(858) 342-4656 | rgans@scalefirm.com

respectfully requests that this arbitration be dismissed in its entirety, and be reclassified for administration under the AAA Commercial Arbitration Rules retroactive to commencement. Alternatively, Pashion requests the opportunity to conduct discovery of Claimant directed to the issues set forth above prior to proceeding any further in this matter.

Respectfully,

*/s/Robert S. Gans*

Robert S. Gans

JAMS will administer arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers[1] only if the contract arbitration clause and specified applicable rules comply with the following minimum standards of fairness:

1. The arbitration agreement must be reciprocally binding on all parties such that (a) if a consumer is required to arbitrate their claims or all claims of a certain type, the company is so bound and (b) no party shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction.

2. The consumer must be given notice of the arbitration clause. Its existence, terms, conditions and implications must be clear.

3. Remedies that would otherwise be available to the consumer under applicable federal, state or local laws must remain available under the arbitration clause, unless the consumer retains the right to pursue the unavailable remedies in court.

4. The arbitrator(s) must be neutral, and the consumer must have a reasonable opportunity to participate in the process of choosing the arbitrator(s).

5. The consumer's access to arbitration must not be precluded by the location of the arbitration.

6. The clause or procedures must not discourage the use of counsel.

7. With respect to the cost of the arbitration, when a consumer initiates arbitration against the company, the only fee required to be paid by the consumer is $250, which is approximately equivalent to current court filing fees. All other costs must be borne by the company, including any remaining JAMS Filing Fee, Case Management Fee and all professional fees for the arbitrator's services. When the company is the claiming party initiating an arbitration against the consumer, the company will be required to pay all costs associated with the arbitration.

8. In California, the arbitration provision may not require the consumer to pay the fees and costs incurred by the opposing party if the consumer does not prevail.

9. The arbitration provision must allow for the discovery or exchange of non-privileged information relevant to the dispute.

10. An Arbitrator's Award will consist of a written statement stating the disposition of each claim. The award will also provide a concise written statement of the essential findings and conclusions on which the award is based.

1  These standards are applicable where a company systematically places an arbitration clause in its agreements with individual consumers and there is minimal, if any, negotiation between the parties as to the procedures or other terms of the arbitration clause. A consumer is defined as an individual who seeks or acquires any goods or services, primarily for personal, family or household purposes, including the credit transactions associated with such purchases, or personal banking transactions. These standards do not apply to the use of arbitration in resolving disputes arising from commercial transactions between a lender and commercial borrowers or a company and commercial customers; other financial services such as investment transactions or real estate transactions; or to matters involving underinsured motorists. Nor do they apply if the agreement to arbitrate was negotiated by the individual consumer and the company.

(c) Copyright 2024 JAMS. All rights reserved.

# Exhibit I

# Consumer

## Arbitration Rules and Mediation Procedures



**American Arbitration Association®**

Available online at **adr.org**
Rules Amended and Effective May 1, 2025

If you would like to speak to a member of the AAA® consumer team, please visit **www.adr.org.**

# Table of Contents

About the American Arbitration Association® . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

Consumer Arbitration Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

   R-1. Applicable Rules of Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

   R-2. Judicial Intervention. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

   R-3. AAA Authority and Delegation of Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

   R-4. Filing Requirements and Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

   R-5. Answers and Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

   R-6. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

   R-7. Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

   R-8. Interpretation and Application of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

   R-9. Small Claims Option for the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

   R-10. Declining or Ceasing Administration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

   R-11. Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

   R-12. Business Notification and Publicly Accessible Consumer Clause Registry . . . . . . .   13

   R-13. Administrative Conference with the AAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

   R-14. Fixing of Locale. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

   R-15. Number and Appointment of Neutral Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . .   14

   R-16. Disclosures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

   R-17. Disqualification of Arbitrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

   R-18. Vacancies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

   R-19. Preliminary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

   R-20. Exchange of Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

   R-21. Enforcement Powers of Arbitrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

   R-22. Date, Time, Place, and Method of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

   R-23. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

   R-24. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

   R-25. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

   R-26. Official Record of Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

   R-27. Interpreters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

   R-28. Extensions of Time and Postponements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

   R-29. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . . .   19

   R-30. Conduct of Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

   R-31. Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

R-32. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

R-33. Written Statements and Post-Hearing Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

R-34. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

R-35. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

R-36. Documents-Only Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-37. Closing of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-38. Reopening of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

R-39. Waiver of Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-40. Serving of Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-41. Communications. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-42. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

R-43. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-44. Time of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-45. Form of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-46. Scope of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R-47. Award upon Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-48. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-49. Modification of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

R-50. Release of Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-51. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-52. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-53. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

R-54. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-55. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-56. Remedies for Nonpayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

R-57. Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

R-58. Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Procedures for the Resolution of Disputes through Document Submission** . . . . . 29

D-1. Applicability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

D-2. Preliminary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

D-3. Time of Award. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**Administrative Fees for Consumer Arbitration Cases** . . . . . . . . . . . . . . . . . . . . . . . . 30

Consumer Mediation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

   M-1. Agreement of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

   M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

   M-3. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

   M-4. Selection of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

   M-5. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

   M-6. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

   M-7. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

   M-8. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

   M-9. Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

   M-10. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

   M-11. No Written Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

   M-12. Termination of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

   M-13. Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

   M-14. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

   M-15. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

   M-16. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

   M-17. Costs of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# Consumer Arbitration Rules and Mediation Procedures



## About the American Arbitration Association

Trusted by businesses and individuals worldwide, the American Arbitration Association (AAA®) provides alternative dispute resolution (ADR), a generally faster and more cost-effective alternative to litigation. Backed by AAA's decades of experience, our impartial arbitrators and mediators help resolve disputes of all sizes—from straightforward cases to complex challenges.

As a not-for-profit organization, the AAA is committed to delivering fair, efficient, and tailored processes while upholding the highest standards of neutrality and integrity. A broad range of perspectives strengthens the ADR process. Since the 1960s, we've taken active steps to expand the pool of qualified arbitrators and mediators to better reflect the varied backgrounds and experiences across society. This ongoing effort allows us to provide our services that are fair, responsive, representative, and aligned with the communities we serve.

## Consumer Arbitration Rules

### R-1. Applicable Rules of Arbitration

(a) The parties shall be deemed to have made the Consumer Arbitration Rules ("Rules") a part of their arbitration agreement when they have provided for arbitration by the American Arbitration Association ("AAA") and the arbitration agreement is within a consumer agreement. If no rules are specified, or there is a different set of AAA rules named in the arbitration agreement, these Rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA. To ensure that you have the most current information, see our website at www.adr.org.

(b) The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are

non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.*

**(c)** The AAA will accept cases after the AAA reviews the parties' arbitration agreement and determines the agreement substantially and materially complies with the due process standards of the *Consumer Due Process Protocol.* If the agreement does not meet these standards, the AAA may decline to administer the case per Rule R-10(a)(iii). If the AAA proceeds with administration and a party disagrees on whether the agreement meets the *Consumer Due Process Protocol*, they can bring the issue to an arbitrator for a final decision. If the arbitrator finds that the agreement does not comply, the arbitrator has the authority to adjust the proceedings to ensure they meet the Rules, *Consumer Due Process Protocol*, and the terms of the arbitration agreement.

**(d)** The AAA has the initial authority to apply or not to apply these Rules. If a party disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply.

**(e)** The parties may agree to modify these Rules but must do so in writing. If they want to make changes after the arbitrator is appointed, any changes may be made only with the approval of the arbitrator. Any changes still must follow the due process principles of the *Consumer Due Process Protocol.*

**(f)** Where no disclosed claim or counterclaim exceeds $25,000, the dispute shall be resolved by the submission of documents only/desk arbitration as provided in Procedure D-1(b) of the Procedures for the Resolution of Disputes through Document Submission, unless otherwise agreed by the parties or determined by the arbitrator.

*\* The AAA will apply the Employment/Workplace Rules to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements. Should a contract call for the Consumer Rules, and the dispute is not between a consumer and a business, the AAA has the discretion to apply the Commercial Rules and Commercial Fee schedule.*

*\* The AAA will apply the Consumer Arbitration Fee Schedule to any dispute between an online marketplace or platform and an individual user or subscriber (using or subscribed to the service as an individual and not incorporated), and the dispute does not involve work or work-related claims.*

## R-2. Judicial Intervention

If, within 30 calendar days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 90 calendar days to permit the party to obtain an order regarding the arbitration from the court. The AAA may extend

that time period on its own initiative or at the request of a party for good cause shown. Any request by a party to extend the time period must be made before the expiration of the initial suspension or any approved extension.

### R-3. AAA Authority and Delegation of Duties

When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules and may be carried out through such of the AAA's representatives as it may direct. The AAA may, at its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

### R-4. Filing Requirements and Procedures

**(a)** Filing Requirements

  **i)**  Arbitration under an arbitration agreement naming the AAA shall be initiated by the initiating party (referred to as the "claimant") filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement. The filing fee must be paid before a matter is considered properly filed.

  **ii)**  Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, a copy of the court order, or a copy of any applicable arbitration agreement from the parties' contract, which provides for arbitration.

    If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party either to make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

  **iii)**  Parties to an existing dispute who have agreed to arbitration administered by the AAA may commence an arbitration under these Rules by filing a written submission agreement and the administrative filing fee. To the extent that the parties' submission agreement differs from the procedures set forth in these Rules, those differences shall be clearly stated in the submission agreement.

  **iv)**  Information to be included with any arbitration filing includes:

    **a)**  The name of each party;

**b)**  the address of each party and, if known, the telephone number and email address;

**c)**  if applicable, the name, address, telephone number, and email address of any known representative for each party;

**d)**  a statement setting forth the nature of the claim, including the relief sought and the amount involved;

**e)**  the requested location of the hearing if an in-person hearing is requested;

**f)**  a brief explanation of the dispute and specification of the amount of money in dispute, if applicable; and

**g)**  a statement of the relief sought.

**v)**  When filing a Demand, answer, or counterclaim, the parties are encouraged to provide sufficient detail to make the dispute clear to the arbitrator.

**vi)**  Cases that do not meet these filing requirements will be returned and will not be considered to have been filed with the AAA. Such cases may be resubmitted with the necessary information, documents, and fees.

**(b)**  Filing Procedures

**i)**  The initiating party may file or submit a dispute to the AAA in the following manner:

**a)**  through AAA WebFile®, located at www.adr.org; or

**b)**  by filing the complete Demand or Submission with any AAA office, regardless of the intended locale of hearing, with payment to follow as directed by the AAA; or

**c)**  by emailing the complete Demand or Submission to casefiling@adr.org, with payment to follow as directed by the AAA.

**ii)**  The claimant must notify, in writing, the party or parties that the case is filed against (referred to as the "respondent") that it wishes to arbitrate a dispute and shall simultaneously provide a copy of the Demand and any supporting documents to the opposing party or parties. In the event the parties dispute which party or parties should be the claimant(s) and which party or parties should be the respondent(s), the AAA may make an initial determination, subject to a final determination by the arbitrator.

**iii)**  Any documents, notices, or process necessary for the filing of an arbitration under this Rule may be served on a party:

**a)**  by mail addressed to the party or its authorized representative at their last known address;

**b)**  by electronic service/email, with the prior agreement of the party being served;

**c)**  by personal service; or

**d)**  by any other service methods provided for under the applicable

procedures of the courts of the state where the party to be served is located.

**iv)** The AAA shall provide notice to the parties (or their representatives if so named) of the receipt of the Demand or Submission when the administrative filing requirements have been satisfied. The date on which the filing requirements are satisfied shall establish the date of filing the dispute for administration. However, all disputes in connection with the AAA's determination of the date of filing may be decided by the arbitrator.

**(c)** Any dispute regarding whether a condition precedent has been met may be raised with the arbitrator for determination.

**(d)** The AAA has the authority to make an administrative determination whether the filing requirements set forth in this Rule have been met.

**(e)** The AAA shall have the discretion, subject to the final determination of an arbitrator once appointed, to administer multiple claims filed by the same party arising out of the same contract as a single case. The AAA shall have the discretion, subject to the final determination of an arbitrator once appointed, to require that multiple claims filed by the same party arising out of separate contracts be filed and administered as individual cases.

**(f)** Any decision made by the AAA regarding filing requirements and procedures shall not interfere with the arbitrator's authority to determine jurisdiction pursuant to Rule R-7.

## R-5. Answers and Counterclaims

**(a)** The respondent may submit a written response to the Demand, known as an "answer," within 14 calendar days of being requested by the AAA, copying all other parties to the arbitration.

**(b)** The respondent may also file a counterclaim, which is the respondent's Demand against the claimant. If the respondent files a counterclaim, the counterclaim must briefly explain the dispute, specify the amount involved, and the relief being sought. The claimant may file an answer or reply in response to the counterclaim with the AAA within 14 calendar days after the AAA sends notice of the filing of the counterclaim.

**(c)** If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant. The case will move forward after 14 calendar days, regardless of whether an answer is filed.

**(d)** If the respondent alleges that a different arbitration provision is controlling, the AAA will make an initial administrative determination regarding the controlling arbitration provision subject to a final determination by the arbitrator.

## R-6. Changes of Claim

(a)  Once a Demand has been filed, any new claims or counterclaims, or changes to a claim or counterclaim, must be made in writing and sent to the AAA. The party making the new or different claim or counterclaim shall send a copy to the opposing party. As with the original Demand or counterclaim, a party shall have 14 calendar days from the date the AAA notifies the parties it received the new or different claim or counterclaim to file an answer with the AAA.

(b)  If an arbitrator has already been appointed, a new or different claim or counterclaim may only be filed if the arbitrator allows it.

## R-7. Jurisdiction

(a)  The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim.

(b)  The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not, for that reason alone, render invalid the arbitration clause.

(c)  A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the established due date for the filing of the answer to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

## R-8. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator, and a difference arises among them concerning the meaning or application of these Rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for a final decision.

## R-9. Small Claims Option for the Parties

(a)  For claims within the jurisdictional limit of the appropriate small claims court, the parties may elect to waive arbitration and proceed in small claims court. Either party may choose to take their own claims directly to small claims court without first filing with the AAA.

**(b)** If a party files a claim with the AAA and that same party then notifies the AAA and the opposing party that they would prefer to proceed in small claims court, the AAA will administratively close the case.

**(c)** If the respondent requests that a claimant's claim filed with the AAA be decided in small claims court, the AAA will ask all parties to comment on this request. If the parties agree, the AAA will administratively close the case, and the parties may proceed to small claims court. If the parties disagree as to whether the claim is within the jurisdiction of small claims court, the issue will be submitted to the arbitrator.

## R-10. Declining or Ceasing Administration

**(a)** The AAA, in its sole discretion, may make the administrative determination to decline to accept a Demand for Arbitration, stop the administration of an ongoing arbitration, and/or decline to administer future cases from a party under the following circumstances:

   **i)** where a party or the party's representative fails to abide by the *American Arbitration Association-International Centre for Dispute Resolution Standards of Conduct for Parties and Representatives.*

   **ii)** where a party fails to submit payment of fees requested in accordance with the Rules or Consumer Arbitration Fee Schedule.

   **iii)** where the parties' consumer arbitration agreement does not comply with the *Consumer Due Process Protocol.*

**(b)** In the event the AAA makes the administrative determination to cease or decline administration of a case due to any of the reasons outlined in this Rule, the parties may choose to submit their dispute to the appropriate court.

## R-11. Mediation

During the AAA's administration of the arbitration or at any time while the arbitration is pending, the AAA may offer mediation to the parties, or the parties may request mediation.  Unless otherwise agreed by the parties, mediation will be administered by the AAA and conducted pursuant to the applicable provisions of the AAA's Consumer Mediation Procedures. Absent an agreement of the parties to the contrary, the mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings. The parties shall confirm to the AAA the completion of any mediation. Unless agreed to by all parties and the neutral, the mediator and arbitrator shall not be the same individual.

## R-12. Business Notification and Publicly Accessible Consumer Clause Registry

(a) A business that provides for or intends to provide for arbitration pursuant to these Rules or another set of AAA rules in a consumer contract (as defined in Rule R-1(b)) should register its consumer arbitration clause with the publicly accessible AAA Consumer Clause Registry.

(b) Upon receiving the arbitration agreement, the AAA will review the agreement for material compliance with due process standards contained in the *Consumer Due Process Protocol.* The AAA's review of a consumer arbitration clause and determination of whether to administer arbitrations pursuant to that clause is only an administrative determination by the AAA and cannot be relied upon or construed as a legal opinion or advice regarding the enforceability of the arbitration clause. There is a nonrefundable review fee, detailed in the Consumer Arbitration Fee Schedule, to register a clause.

(c) Any subsequent changes, additions, deletions, or amendments to a currently registered arbitration agreement must be resubmitted for review, and a review fee may be assessed at that time. The AAA will decline to administer consumer arbitrations arising from that arbitration agreement where the business fails to pay the review fee. Any different arbitration agreements of the same business or its subsidiaries must be submitted for review and are subject to the current review fee.

(d) After the AAA reviews the submitted consumer clause, receives the Registry fee, and determines it will administer consumer-related disputes filed pursuant to the clause, the business will be included on the Registry. To register a consumer arbitration clause or for more information concerning the Consumer Clause Registry, please visit: www.adr.org/clauseregistry.

(e) The Registry also has an annual nonrefundable fee for the business' arbitration agreement(s). If a business declines to pay the annual Registry fee, the business will be removed from the Registry. As a result, the AAA will decline to administer consumer arbitrations arising from that arbitration agreement. Charging an expedited review fee as an alternative is not permissible.

(f) If a business does not submit its arbitration agreement for review prior to an arbitration being filed under that clause, the AAA will conduct an expedited review for the specific arbitration case. In addition to any standard filing fees that are owed for that case, the business also will be responsible for paying a one-time, nonrefundable expedited review fee, which is detailed in the Consumer Arbitration Fee Schedule. Subsequent registration of the agreement with the Registry requires a separate review and fee. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement if the business declines to pay the fees and waive any provision that the AAA determines does not comply with the *Consumer Due Process Protocol.*